## THRAWLEY *v.* THE STATE.

[No. 18,813.. Filed November 1, 1899.]

HOMICIDE.—*Instructions.*—One convicted of murder in the first de-
gree, under correct instructions relating to that grade of homicide,
cannot complain of instructions which permitted a conviction of
murder in the second degree on evidence which would only war-
rant a conviction for manslaughter. *pp. 377, 378.*

INSTRUCTIONS.—*Must be Considered as a Whole.*—Instructions must
be considered as a whole, and it is not necessary for the court, in
instructing the jury as to some phase of the case, to reiterate all the
qualifying circumstances previously explained. *pp. 378, 379.*

CRIMINAL LAW.—*Instructions.*—*Failure of Defendant to Testify.*—An
instruction in a criminal case that "The defendant is a competent
witness in his own behalf, at his election.   If he fails to testify, it
is his right so to do, and the fact that he does not testify will raise

Thrawley *v.* State.

no presumption of any kind against him, and no inference of any kind can be drawn therefrom by the jury," is a sufficient compliance with the fourth subdivision of §1798 Horner 1897, requiring the court to instruct the jury as to their duty, where the defendant fails to testify. *p. 380.*

EVIDENCE.—*Impeachment of Witness.—Reputation.*—On the inquiry concerning the character of a witness for truth at the time of testifying, the law accepts proof of the reputation of the witness at the time of testifying as proof of the character of the witness, no matter when or how the reputation was acquired. The origin, duration, and extent of the reputation are merely facts for the jury to consider in determining the weight of the impeaching evidence. *pp. 380, 381.*

APPEAL.—*Exclusion of Evidence.—Sufficiency of Motion for New Trial.*—A motion for a new trial charging that the court erred in refusing to strike out the evidence of the witnesses tending to show the bad moral character of a certain other witness, is not sufficiently definite to present any question in the Supreme Court upon the ruling of the trial court excluding the evidence. *pp. 381, 382.*

SAME.—*Refusal to Give Instructions.*—Error cannot be predicated upon the refusal of the court to give certain instructions, where the instructions given by the court on its own motion fully and fairly covered the law of the case. *p. 382.*

EVIDENCE.—*Homicide.—Self-Defense.—Reputation of Deceased for Peaceableness.*—Where one on trial for murder introduces evidence to show that the killing was done in self-defense in mutual combat, the State may, on rebuttal, prove the character of the deceased for peaceableness. *pp. 382-385.*

CRIMINAL LAW.—*Minutes of Grand Jury.—Right to Inspect.*—A defendant for the purpose of cross-examining witnesses, has no right to an inspection of the minutes of the grand jury which indicted him. *pp. 385, 386.*

EVIDENCE.—*Homicide.—Inspection by Jury of Skull of Deceased.*—On the trial of one indicted for murder, it is proper to submit the skull of the deceased for the inspection of the jury, where the evidence disclosed that the bullet fired by defendant passed entirely through the head, and it became material to determine the relative position of the defendant and deceased when the shot was fired; a surgeon having testified to certain physical evidences in the skull by which this could become known. *p. 386.*

SAME.—*Experiments.*—Where one on trial for murder claimed that he shot deceased in a hand-to-hand combat, and in self-defense, the result of experiments in shooting with defendant's revolver, at blotting-pads, is admissible in evidence for the purpose of ascertaining the distance at which the shot would burn or powder-mark the deceased's scalp, it having been shown that the cartridges used in

the experiment were such as were used by the defendant at the time of the homicide. *pp. 386, 387.*

From the Wayne Circuit Court. *Affirmed.*

*W. A. Brown* and *M. E. Forkner,* for appellant.

*W. L. Taylor,* Attorney-General, *Merrill Moores, C. C. Hadley, R. A. Jackson, H. C. Starr, J. H. Jones, R. E. Kirkman* and *W. R. Steele,* for State.

BAKER, J.—Appellant was convicted of murder in the first degree. The errors assigned are the overruling of his motion to quash the indictment and of his motion for a new trial.

The indictment follows the form for murder in the first degree by shooting, given in Gillett on Crim. Law 417. Though the form is archaic and not the plainest and tersest that might be drafted, it states facts sufficient to constitute the crime of murder in the first degree. The statute commands that an indictment shall not be quashed "for any surplusage or repugnant allegation, if there is sufficient matter alleged to indicate the crime and person charged." §1756 R. S. 1881 and Horner 1897, §1825 Burns 1894.

Appellant complains of part of the twenty-fourth instruction to the effect that if appellant and deceased engaged in a mutual combat in which deceased was unarmed and appellant without legal excuse and without deceased's knowledge voluntarily used a deadly weapon in a way likely to cause and actually causing the death of deceased, appellant would be guilty of murder. The point made is that intent to kill, malice and premeditation are ignored. The portion selected by counsel for criticism end with a semicolon. Following the semicolon, the instruction reads "and if it further appears from the evidence beyond a reasonable doubt that the defendant provided himself with such weapon for the occasion and used it deliberately and with malice aforethought and with intent to take the life of the deceased or to do him bodily harm, then such killing would be murder in the first

degree." In *Cooper* v. *State*, 120 Ind. 377, defendant was convicted of murder in the second degree. One of the grounds of his motion for a new trial was that the word "voluntary" was omitted in an instruction defining manslaughter. The court said: "It is not perceived how the defendant could have been prejudiced by the omission of the word". That is, Cooper, having been convicted of a higher grade of homicide under correct instructions relating thereto, would not be heard to complain that the court had charged the jury that they might convict him of the lower grade on less evidence than the law requires. If appellant had been convicted of murder in the second degree, he might successfully urge that the verdict should not stand upon an instruction authorizing that conviction on evidence of manslaughter only. In this instruction, as well as in preceding ones that defined and explained the various degrees of homicide, the jury were explicitly told the elements that constitute the crime of which they convicted appellant.

There was evidence tending to show that deceased had debauched appellant's wife and that appellant knew of it in December preceding the homicide in March. The twenty-sixth instruction takes up this evidence and proceeds: "The mere fact that one person had sexual intercourse with another person's wife will not justify the taking of human life. Proof of this fact alone will be no defense in a prosecution for criminal homicide. The most it can do is, in certain cases, to reduce the grade of the crime from murder to manslaughter. If a man finds another in the act of sexual intercourse with his wife and kills him in a heat and transport of passion engendered thereby, the crime will be manslaughter only. This circumstance will, in law, be deemed a sufficient provocation to reduce the grade of the crime from murder to manslaughter. If, however, the husband, after making the discovery, does not kill the offender until after a sufficient time has elapsed for his sudden heat and transport of passion to cool and subside, and in which he has an oppor-

Thrawley v. State.

tunity to reflect and deliberate over the matter, and after so doing he voluntarily kills the person who has wronged him, the crime will be murder and not manslaughter." Criticism is made upon the last part of the last sentence. The contention is that the jury must have understood therefrom that a voluntary killing was murder. The court had theretofore fully and correctly instructed the jury regarding the elements necessary to constitute the various degrees of homicide, the presumption of intent from the use of a deadly weapon, and the right of self-defense. The charge of the court must be taken as a whole. *McDermott* v. *State*, 89 Ind. 187, 192; *Stout* v. *State*, 96 Ind. 407, 410; *Deilks* v. *State*, 141 Ind. 23, 25; *Shields* v. *State*, 149 Ind. 395, 406; *McIntosh* v. *State*, 151 Ind. 255. The court can not state the whole law of the case in one breath. And it will not do to say that in setting forth some phase of the case the court must bring forward all of the qualifying circumstances that have already been explained. This instruction is dealing with adultery as a provocation. The attention of the jury is called sharply to that question, and that only. The "mere fact" does not justify killing. If the husband, in a sudden heat induced by the discovery, kills the paramour on account of his wrong, the crime will be manslaughter only; but if, after cool deliberation, the husband "voluntarily kills the person who has wronged him, the crime will be murder and not manslaughter". The plain meaning is that the "voluntary killing" is murder only in case the husband, solely on account of the adultery, coolly and deliberately kills the paramour. If, in making this statement, it was necessary to repeat the definitions of malice and premeditation and the presumption from the use of a deadly weapon, it would also be incumbent upon the court to reiterate the exposition of the right of self-defense; for a voluntary killing may be neither murder nor manslaughter, it may be justifiable or excusable homicide.

The purport of the twenty-eighth instruction is that if a person arms himself with a deadly weapon and seeks another with the intent of satisfying a grudge and voluntarily by use of the deadly weapon kills the other who in the quarrel resulting from the meeting neither uses nor manifests any intention of using a weapon of any kind, the crime is murder in the first degree.    The objections urged are that elements of malice, premeditation, provocation and excuse are ignored. If it were conceded that the instruction, standing alone, is faulty or incomplete, it can not be presumed that the jury understood that they should disregard and cast from their minds the instructions given immediately prior thereto and as parts of a complete charge.    In this instruction the court is obviously treating of a single aspect of the case.  If the elements, claimed to be wanting, were not implied, as they are, from the language used, they are expressly stated in other parts of the charge.

The thirtieth instruction reads:   "In a criminal case the defendant is a competent witness in his own behalf at his election.    If he fails to testify, it is his right so to do, and the fact that he does not testify will raise no presumption of any kind against him, and no inference of any kind can be drawn therefrom by the jury."    This is a sufficient compliance with the fourth subdivision of §1798 R. S. 1881 and Horner 1897, §1867 Burns 1894.   No formula of words is prescribed in which the court shall "instruct the jury as to their duty under the provisions of this section".   It is not presumable that the jury, sworn and instructed to find the facts from the evidence, considered and discussed a matter which they were told was neither direct nor inferential evidence against appellant.

Appellant's wife testified in his behalf.  Character evidence was introduced in rebuttal to impeach her as a witness. Referring to this evidence, the court in the thirty-first instruction said:   "If the testimony shows that her character was good at and prior to the time that deceased was killed,

Thrawley *v.* State.

and that it has become bad since by reason of such killing, and for no other reason, you should consider this fact for the purpose of settling what weight, if any, you will give it in determining her credibility as a witness." Appellant offered an instruction to the effect that, under such circumstances, the jury should disregard the impeaching evidence. Appellant also objected to the introduction of this evidence, and moved to strike it out. The purpose of testimony to impeach the credibility of a witness is to enable the jury to judge of the estimation in which the witness within his soul holds truth and veracity at the time of testifying. Character, the inner man, can be known to the world only through the acts and utterances of the outer man; and the world's estimate is reputation. Thus, reputation is taken as proof of character. Manifestly, a person of bad character may have a good reputation, and conversely. The man or the world may be in fault, but no blame attaches to the law, which accepts the best proof available. So, on the inquiry concerning the witness's character for truth at the time of testifying, the law accepts proof of the reputation of the witness at the time of testifying (or as nearly as may be) as proof of the witness's character, no matter when or how the reputation was acquired. The origin, duration and extent of the reputation are merely facts for the jury to consider in determining the weight of the impeaching evidence. *Hauk* v. *State*, 148 Ind. 238, 261; *Wright* v. *City of Crawfordsville*, 142 Ind. 636, 642; 5 Am. & Eng. Ency. of Law (2nd ed.) 884.

Several witnesses testified to the reputation of Mrs. Thrawley. One of them, Mogle, after testifying on direct examination that he knew her general reputation, etc., stated on cross-examination that his testimony was based entirely on his own opinion formed from what Mrs. Thrawley had told him since the homicide. The court overruled appellant's motion to strike out the witness's testimony. The only specification in the motion for a new trial under which this alleged error could be presented was one charging that the

court erred in refusing to strike out the evidence of the witnesses tending to show the bad moral character of Mrs. Thrawley after they had testified that her blemished reputation was due entirely to the transactions involved in this case. Under this, no objection to Mogle's testimony can be heard that is not equally applicable to the testimony of the others. *McClain* v. *Jessup*, 76 Ind. 120; *Reese* v. *Caffee*, 133 Ind. 14; *Heltonville Mfg. Co.* v. *Fields*, 138 Ind. 58.

The court refused to give various instructions prepared by appellant's counsel, regarding the various degrees of homicide, malice, premeditation, provocation and self-defense. The charge of the court to the jury comprised thirty-seven instructions and covered the entire case fully and fairly. Whenever this is done, further instructions covering the same ground in different phraseology become hindrances rather than helps to the jury.

On behalf of appellant no reputation witnesses were produced to show that the character of deceased for peaceableness was bad. Appellant did not testify, but his defense was that he killed deceased in a hand-to-hand encounter in the proper defense of his person from an apparently felonious assault by deceased. On rebuttal the State proved the good reputation of deceased for peaceableness. The voluntary killing of deceased by appellant having been admitted, the questions to be solved by the jury were: Did he do it with premeditated malice? Or, with malice, but without premeditation? Or, without premeditation or malice, but in a sudden heat and without legal excuse? Or, was appellant without fault in the encounter, and was deceased the aggressor, and did appellant honestly believe that it was necessary to take life to protect himself from his assailant's apparently felonious assault? The appellant sought to meet the charge against him by a countercharge against the deceased. Therefore the jury, in determining appellant's guilt or innocence, were bound to try, if not the truth of the charge, at least the honesty of appellant's belief of the

charge that deceased was the guilty one.   On this issue, appellant would have been entitled to win if he had produced sufficient evidence to raise in the minds of the jury a reasonable doubt of his guilt; and the State could succeed, on this issue, only by proving beyond a reasonable doubt that deceased did not make a felonious assault upon appellant and that appellant had no reason to believe and did not believe that such an assault was about to be made upon him.   This last statement, however, affects merely the quantity and not the quality of evidence.   In negation of the State's evidence tending to show appellant's guilt, he could have introduced, as a substantive fact to be considered by the jury, evidence of his good character for peace.   The jury might have said, We doubt that a man of such a good character would commit the crime imputed to him; there must be some mistake in the State's evidence.   But in negation of appellant's evidence tending to show that deceased was the only person in fault, it is claimed that deceased's character for peace can not be considered without appellant's consent.   If, in determining the question, Was appellant in fault, his good character for peace would be evidence of such quality as to be admissible as disproof, so deceased's good character for peace was evidence of such quality as to be admissible as disproof of the charge against him.   The character for peace of each of them was presumed to be good in the absence of evidence. But the evidence of the State in support of the charge against appellant was such an attack upon his character for peace as to authorize him to introduce his good character as a substantive fact, involved in the transaction, in disproof of the charge, without the State's consent.   So the evidence of appellant in support of the charge against deceased was such an attack upon his character for peace as to authorize the State to introduce his good character as a substantive fact, involved in the transaction, in disproof of the charge, without appellant's consent.   The fact that there is a disparity between the parties as to quantity of evidence can not create a dis-

parity as to quality.   If each of two combatants lays the
blame upon the other, the same quality of evidence should be
available to both.   It would be of advantage to the one party
or the other to allow or forbid at his pleasure an investigation
pertinent to the issues (and it must be pertinent or it would
not be permitted at all), but it does not accord with the im-
partiality that characterizes justice and the law.

In *Hinch* v. *State*, 25 Ga. 699, it was held that, in dis-
proof of defendant's plea of self-defense, evidence that de-
ceased was a small, frail man was admissible "to enable the
jury to form a more satisfactory judgment upon the neces-
sity of taking the life of the deceased."   Is it not as necessary
that the jury shall know deceased's disposition to use his
strength?   Whether he is a Falstaff or a De Bergerac?

The question has already been decided by this court.   In
*Dukes* v. *State*, 11 Ind. 557, 71 Am. Dec. 370, on page
565 the court said:   "The State was permitted to give evi-
dence of the character of the deceased, White.   As a general
rule, it is the character of the living—the defendant on trial
·for the commission of crime and not of the person on whom
the crime was committed, that is in issue, and as to which,
therefore, that evidence is admissible.   But, in a case like
the present, where the question arises whether the accused
acted, in the commission of a homicide, upon grounds that
justify him in the deed, it would seem that the character of
the deceased might be a circumstance to be taken into con-
sideration.   Especially might this be the case where the ac-
cused knew that character."   Unfortunately, the record of
this case has been lost from the files; and it does not appear
explicitly from the report at what point in the trial and
under what conditions this evidence was received.   But it is
fairly inferable that it was admitted to rebut the claim of
self-defense; and also that defendant made no attack upon
the character of deceased for peaceableness except by charg-
ing that deceased was the aggressor, for otherwise the ad-
missibility of the evidence would have been put upon the

right of the State to sustain the deceased's "general reputa-tion for peace" (as proof of "character") against the impeach-ing testimony produced by defendant.    However, in the case of *Fields* v. *State*, 134 Ind. 46, the record shows that the defense offered no impeaching testimony to attack the. char-acter of the deceased for peaceableness.    Defendant claimed that the killing was done in self-defense in mutual combat. On rebuttal the State introduced reputation witnesses to prove the good character of the deceased for peaceableness. Fields squarely raised the very question presented by Thraw-ley; and the court said:    "The defendant testified that the deceased assaulted him and that he apprehended great injury to life or limb from the assault.    On rebuttal the court per-mitted the State to prove that the deceased was a peaceable, quiet man.    This was not erroneous."

On the question as to whether or not deceased was in fact the aggressor, this evidence was admissible in negation of appellant's declaration that he was, just as evidence of ap-pellant's good character for peace would have been received in disproof of the State's evidence that appellant was the ag-gressor.    But this evidence would not be competent disproof of the honesty of appellant's claimed belief of imminent peril, apart from evidence that deceased's good character for peace was known to appellant.    The evidence shows that deceased and appellant were neighbors on the day of the homicide and for a long time before.    The good character of deceased was proved by evidence of his general reputation in that neigh-borhood.    This afforded presumptive evidence of appellant's knowledge.    Horrigan & Thompson's Cases on Self-Defense, note, pp. 695-6.

The next specification in the motion reads:    "The court. erred in refusing to require the State to allow the defendant an inspection of the grand jury record containing the evi-dence of the State's witnesses before the grand jury, with a view to the proper cross-examination of said witnesses touch-

ing their recollection and the consistency of their stories and their credibility." The State is the plaintiff. The indictment is the complaint. It is no more proof than is a complaint in a civil action. The clerk of the grand jury "takes minutes" of the evidence given before them. They may, or may not, be taken correctly by the clerk. These minutes are preserved for the use of the prosecuting attorney on the trial as a memorandum of what the State's witnesses may be expected to testify to. The defendant is no more entitled to the use of these minutes than is a defendant in a civil case to his adversary's trial-brief of the evidence. The statute, requiring grand jurors "to disclose the testimony of a witness examined before the grand jury for the purpose of ascertaining whether it is consistent with that given by the witness before the court", indicated the proper course for appellant to pursue. §1662 R. S. 1881 and Horner 1897, §1731 Burns 1894.

Appellant's bullet passed clear through deceased's head. In determining the attitudes and relative positions of the parties when the shot was fired, it was important that the jury should know through which hole in the skull the bullet entered. A surgeon testified to certain physical evidences in the skull by which this could be known. It was proper to submit the skull itself to the jury for inspection. *Davidson* v. *State*, 135 Ind. 254; *State* v. *Wieners*, 66 Mo. 13.

A witness for the State was permitted to testify to the results of experiments in shooting with appellant's revolver at blotting-pads. This evidence was limited by the court to the purpose of showing how far unburned grains of powder would carry. Against appellant's claim that the homicide occurred in a hand-to-hand combat, the State proved that a heavy snow had fallen the night before; that the tracks of the deceased proceeded in a straight line along the highway to the point where he was found dead; that the tracks of appellant led from his gate out into the highway to a point

about ten feet from where deceased fell, turned around and led back through the gate; that the snow between was undisturbed and showed nowhere any indications of a struggle; that appellant's bullet entered deceased's head somewhat back of the ear and ranged forward; that there were no powder marks or burns on deceased's head; and many other circumstances in discredit of appellant's plea.   In the experiments in question, the same make and grade of cartridges were used that appellant employed in the homicide.   It appeared in evidence that these cartridges are standard and very uniform in operation.   In relation to the distance to which unburned grains of powder carry, the conditions prevailing at these experiments were substantially the same as those at the homicide.   It was important that the jury should know at what distance from the muzzle the shot would fail to burn or powder-mark the deceased's scalp.   The evidence of the witness and the exhibition of the blotting-pads were competent for this purpose.   *State* v. *Jones,* 41 Kan. 312, 21 Pac. 265; *Sullivan* v. *Commonwealth,* 93 Pa. St. 284; *Boyd* v. *State,* 14 Lea 169.

There was no want of evidence to support each allegation of the indictment.   Weight of evidence and credibility of witnesses are matters exclusively for the jury.

Judgment affirmed.