## Commonwealth *v.* Howe, Appellant.

*Criminal law—Rape—Felonious rape—Girl under age of consent—Reputation—Charge.*

1. On the trial of an indictment for felonious rape on a girl under the age of consent, the defendant is entitled to an acquittal if he shows that the girl consented and that she was of bad repute.

2. In such a case if the court in its charge dwells at length on the fact that the girl had no consent to give, and passes over or minimizes the evidence as to her bad repute and a conviction results, such conviction will be reversed by the appellate court.

3. In such a case it is reversible error for the trial judge to charge

that the defendant must prove that the bad repute of the girl existed before his unlawful relation with her.

4. Evidence of good character is substantive evidence to be weighed and considered in connection with all the other evidence in the case; and it is to be regarded as a fact like any other tending to establish the defendant's innocence and ought to be so regarded by both court and jury.

*Practice, C. P.—Trial—Points—Answer to points.*

5. The trial judge in answering points should read each point and answer it separately in order that the jury may be able to apply the proper proposition to the answer. It is improper to read a number of points consecutively and affirm them altogether after reading the last point.

Argued Nov. 8, 1909.    Appeal, No. 14, March T., 1910, by defendant, from judgment of Q. S. Lackawanna Co., Oct. T., 1907, No. 19, on verdict of guilty in case of Commonwealth v. Carl Howe.    Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.    Reversed.

Indictment for rape.    Before NEWCOMB, J.

The facts appear by the opinion of the Superior Court, and by the previous reports in 35 Pa. Superior Ct. 554, and 38 Pa. Superior Ct. 208.

The court charged in part as follows:

· [It may be that the girl was enamored of the defendant; it may be she was fond of him and willing to practice deception on her father for the sake of meeting the defendant.    Be that as it may, if he took advantage of such opportunity as her situation and willingness might afford and had clandestine meetings with her, and thus gained her consent, and had connection with her between September 9, 1905, and December 2, 1907, he would be guilty, and if you are so satisfied beyond reasonable doubt he should be found guilty.

Mr. O'Brien: You mean 1906, you said 1907.

The Court (resuming): I said between September 9, 1905, and December 2, 1907.    You will understand I made a mistake, and that is December, 1906.    That is so because under the law a woman-child of that age has no consent to give.

If you get the impression from the defendant's argument that the girl is not within the protection of the statute under which the case arises, if she readily consented without resistance, it would be misleading. The mere fact that the girl readily yielded to the defendant's advances does not in itself affect the question of his guilt. You can see how that is: The statute itself is based upon the presumption that a girl of that age is not capable of resisting such advances; and, therefore, is likely readily to yield consent. The infirm mind of a girl of that age is assumed by the people in enacting such a law, which is the very reason which underlies this statute.] [1]

[The marked issue in the case is, who tells the truth. I apprehend your verdict will depend upon whether you believe the girl. It would seem to me you will have to determine as between her and the defendant which is to be believed. I can see no escape from that issue.] [15]

[There is evidence, which if believed, would prove the unlawful intimacy earlier than September 9, 1905, and later than December 2, 1906. That, you will see, is a period of nearly fifteen months. That may be called the period covered by the indictment, as it is within that period that the defendant's guilt is to be found if he be guilty. The evidence of his relations with the girl before and after that date is to be considered only as it may tend to show what their relations were during the fifteen months, or thereabouts, covered by the indictment. You can see how that is: If there were a period of intimacy it must have had a beginning; if the commonwealth's case is sound, if it is sustained by the evidence, it can be found that as early as May, 1905, the girl was led astray by the defendant when she was a few months past fourteen years of age, and from that time his unlawful relations continued with her until May, 1907, a period of two years, when they are claimed to have been discovered, except for interruptions such as occurred in midwinter and while the defendant was at Ocean Grove. If you find in favor of the commonwealth as to the beginning of the unlawful relations, it might tend to throw light on the question of their

relations thereafter. So, too, if you should find that the defendant was criminally intimate with the girl in December, 1906, after she became sixteen years of age, and later, in 1907, it might under all the evidence aid you in determining what was going on between them during the fourteen to fifteen months before December, 1906.] [16]

[In that connection the defendant has a right to have the evidence as to his previous good reputation for chastity considered. It is for you to say whether he has proven such previous good reputation by the testimony of these witnesses. If he has, if you are satisfied that he had that kind of a reputation before the time of his relations with this girl, then that is a fact that he is entitled to have considered by you, and it is for you to say whether that in itself operates to create a reasonable doubt, if you find that he had such reputation.] [17]

[If there be no doubt in your mind you will convict the defendant. If guilty, he should be convicted as charged in the second count of the indictment, unless the girl is found by the jury to have been of bad repute. By that is meant bad repute prior to the time of any unlawful relations that she might have had with the defendant.] [18]

[He must prove such repute before the time of any unlawful relations that he may have had with her. If the commonwealth's case is true, the girl might well have become of bad repute by reason of her relations with him. If it became bad merely by reason of that, the defendant could not avail himself of it, for it would be permitting him to take advantage of his own wrong.] [19]

Verdict of guilty, upon which judgment of sentence was passed.

*Errors assigned* among others were (15–19) above instructions, quoting them; (23) in answering and affirming a number of points together, instead of reading and answering them one by one.

*R. H. Holgate*, with him *Taylor & Lewis*, for appellant.

*Joseph O'Brien,* district attorney, with him *Clarence Balentine,* for appellee.

OPINION BY HENDERSON, J., March 3, 1910:

The second count of the indictment on which the appellant was tried was drawn under the Act of May 19, 1887, P. L. 128. It was conceded by the commonwealth that a conviction could not be had under the other counts, and the court instructed the jury to that effect. The defendant denied that he had had illicit relations with the prosecuting witness and also offered evidence to show that she was not of good repute at the time the offense was charged to have been committed. That the intercourse shown by the commonwealth was with the consent of the girl appeared from her own testimony, and the contrary was not alleged. It was a material branch of the defense, therefore, under the proviso of the act that the woman-child was not of good repute and that the carnal knowledge was had with her consent, for under facts so found by the jury the law directs that the defendant be acquitted of felonious rape and convicted of fornication only. In the course of the charge after a discussion at some length of the evidence the court said, "Be that as it may, if he took advantage of such opportunity as her situation and willingness might afford and had clandestine meetings with her, and thus gained her consent, and had connection with her between September 9, 1905, and December 2, 1906, he would be guilty, and if you are so satisfied beyond reasonable doubt he should be found guilty. . . . That is so because under the law a woman-child of that age has no consent to give. If you get the impression from the defendant's argument that the girl is not within the protection of the statute under which the case arises, if she readily consented without resistance, it would be misleading. The mere fact that the girl readily yielded to the defendant's advances does not in itself affect the question of his guilt." In a subsequent part of the charge the court instructed the jury that if the defendant was guilty he should be convicted as charged in the second count of the indictment unless the girl should be found by the jury to have been of bad repute. This is followed

by a consideration of the evidence offered on that subject, and this branch of the charge is closed with the following instruction: "Are you satisfied that the presumption in the girl's favor has been overcome? If so, you will only convict the defendant of fornication." We think the complaint that the bearing of the proviso of the act of 1887 was not adequately brought to the attention of the jury by the portions of the charge referred to, is well founded. The jury was told in very clear language that if the defendant gained the consent of Madeline Patterson and had connection with her between September 9, 1905, and December 2, 1906, he would be guilty and that was so because under the law a woman-child of that age had no consent to give and that the mere fact that the girl yielded to the defendant's advances did not affect the question of his guilt. The jury must have been impressed by the instructions of the court and the reasons stated and would be probably led to conclude that the only available defense was the denial of the commission of the act. It was important, therefore, that the bearing of the proviso of the statute be brought to the attention of the jury in such a way that they could understand that what would otherwise amount to the felony charged in the second count would become a very different offense in the eye of the law if when the act was committed two facts existed; that the woman-child was not of good repute and that she consented to the connection. The only explicit instruction which we find on this subject is, "Are you satisfied that the presumption in the girl's favor is overcome? If so, you will only convict the defendant of fornication." In view of the magnitude of the crime alleged and the effect of bad repute and consent in changing the legal nature of the offense we think the jury should have been more clearly informed of the bearing of the proviso on the character of the charge against the defendant, especially because of the previous instructions as to the immateriality of consent by the girl. As the consent was admitted by the commonwealth and the testimony of several witnesses was offered on the subject of the repute of the girl the question on these points was clearly before the court and jury. The obvious purpose of the

statute is to guard the innocence of youth, but there is an equally apparent purpose not to visit an offender with punishment for a felony if the conditions exist to which the proviso has reference. We are constrained, therefore, to sustain the first assignment.

The fifteenth assignment excepts to the following language of the charge: "The marked issue in the case is, Who tells the truth? I apprehend your verdict will depend upon whether you believe the girl. It would seem to me you will have to determine as between her and the defendant which is to be believed. I can see no escape from that issue." If the question were simply whether the defendant was guilty of the offense expressly charged in the indictment this instruction would not be objectionable, but there were two distinct issues in the case, (1) Was the defendant guilty of the acts charged and proved by the commonwealth? (2) if the acts were committed by the defendant, was the person with whom they were committed of good repute, and did she consent? This instruction overlooks the defense set up under the proviso of the act. That could be made out without reference to the credit to be given by the jury to the testimony of the defendant, and on that branch of the case the question was not whether they believed the girl or the defendant, but whether crediting the former with truthfulness she nevertheless was not of good repute and had consented. The issue was thus made narrower than the evidence allowed, and the jury may have been led to believe that if they accepted the testimony of the girl it was their duty to convict. The fifteenth assignment is sustained.

The indictment related to acts of the defendant committed between September 9, 1905, and December 2, 1906, at which latter date Madeline Patterson was sixteen years of age. The commonwealth offered evidence tending to show illicit relations between the parties beginning in May, 1905. This was admitted by the court not for the purpose of proving the crime charged, but to show the relation between the parties prior to the period covered by the indictment. In the latter part of the charge in considering the subject of repute the court instructed the jury that the defendant should be convicted as charged in

the second count of the indictment unless the girl is found by the jury to have been of bad repute: "By that is meant bad repute prior to the time of any unlawful relations that she might have had with the defendant." A little further along in the charge the same instruction was repeated in these words: "He must prove such repute before the time of any unlawful relations that he may have had with her. If the Commonwealth's case is true, the girl might well have become of bad repute by reason of her relations with him. If it became bad merely by reason of that, the defendant could not avail himself of it, for it would be permitting him to take advantage of his own wrong." This portion of the charge raised an issue on which no evidence was presented. The defendant had produced testimony tending to show that at the time the alleged crime was committed the reputation for chastity of Madeline Patterson was not good, and the only issue on that point was whether the fact existed. The language of the statute is, "If the jury shall find that such woman-child was not of good repute and that the carnal knowledge was with her consent the defendant shall be acquitted of the felonious rape," etc. The period referred to in the statute as the time when the woman-child was not of good repute is the time when the act was committed which constitutes the crime. If at that time the person injured was not of good repute the law declares the crime was of a different and much less serious character. To permit an inquiry as to how this repute became established would introduce an issue in the case entirely apart from the charge in the indictment and one not warranted by the statute. The same reasoning would exclude the reputation for bad repute if in the opinion of the jury the defendant had contributed in part to its creation, and we might have the case of one whose reputation was bad because of general misconduct in which the defendant had participated and where such repute could not be set up by way of defense because of the supposed contribution to that reputation by the accused. The guilty act creates the liability. The mitigation of the offense results from the provision of the statute where there is bad repute and consent. The history of the repute is not the subject of inquiry except as it might

incidentally arise on the examination of the witnesses who testify as to reputation. Under the charge the jury could have been satisfied that the girl was not a person of good repute and still have convicted the defendant, because they inferred or believed that her reputation grew out of her relation with the defendant before the crime set forth in the indictment was committed. This is not in accordance with the statute on which the commonwealth relies for a conviction. The eighteenth and nineteenth assignments must, therefore, be sustained.

The defendant introduced evidence to show that he bore a good general reputation for chastity. The court in calling the attention of the jury to that portion of the evidence said, "It is for you to say whether he has proven such previous good reputation by the testimony of these witnesses. If he has, if you are satisfied that he had that kind of a reputation before the time of his relations with this girl, then that is a fact that he is entitled to have considered by you, and it is for you to say whether that in itself operates to create a reasonable doubt, if you find that he had such reputation." In a subsequent part of the charge the same subject is referred to as "a fact to be taken into consideration and weighed in the scales in his favor, and as viewed by you to see whether in itself it operates to create a reasonable doubt." It is undoubtedly true that in some cases the evidence of good character may have the effect to create a reasonable doubt where without it there might be a conviction. Such was the view expressed in Heine v. Com., 91 Pa. 145. But it is not the only office of evidence of good character to create a reasonable doubt. It has frequently been said that it is substantive evidence to be weighed and considered in connection with all the other evidence in the case. "The evidence of good character is to be considered with the other evidence in the case and if it all combined creates a reasonable doubt the defendant is to be acquitted:" Com. v. Cleary, 135 Pa. 64. Such evidence is offered not simply to raise a reasonable doubt but to establish the innocence of the defendant and is to be regarded as a fact like any other tending to establish the defendant's innocence

and ought to be so regarded by both the court and jury: Hanney v. Com., 116 Pa. 322. Such evidence does not raise a distinct issue; nor is it brought into the case as a mere make-weight. It is to be taken into account with all the other evidence in the case, and if the whole of that evidence is sufficient in the judgment of the jury to show that the defendant is not guilty or to create a reasonable doubt on that point the defendant is entitled to an acquittal: Com. v. Cate, 220 Pa. 138.

Objection is made to the manner in which the learned trial judge answered the points presented by the defendant, and particularly to the fact that these points from the seventh to the seventeenth, inclusive, were read consecutively and affirmed at the conclusion of the reading of the seventeenth. These points contained a variety of propositions, and some of them included recitals of evidence and arguments which might have been properly refused. But as to those which were pertinent the answers should have been given in connection with the reading of the point in order that the jury might have been able to apply the particular proposition to the answer. The proper mode of answering points is thus stated in Everhart v. Searle, 71 Pa. 256: "Points should be read and answered seriatim, and explained to the jury if necessary, and distinctly affirmed, negatived or answered, so that the jury may know that that which has been asserted is or is not the law." We are not persuaded, however, that the method adopted by a trial judge in answering points is a subject of review. The case just cited indicates that it is not. There are numerous assignments to which we think it not necessary to refer. Several of them are not set forth in accordance with the rules of court and cannot be noticed; others relate to occurrences at the trial not likely to recur at the next trial, and others are without merit.

The judgment is reversed with a venire facias de novo.