# Commonwealth *v.* Castellana, Appellant.

*Criminal law — Murder — Jury as judges of law and facts — Charge.*

1. It is the duty of the jury in a criminal case to take the best evidence of the law, as it is its duty to take the best evidence of the facts. They must look to the court for the best evidence of the law, just as they must look to the witnesses for the best evidence of the facts; when they refuse to do either, they disregard their duty and their oaths.

2. It is better for the court in a criminal case to volunteer nothing to the jurors about their being judges of the law, and if an appropriate request is made for instructions along these lines, the constitutional language had better be adhered to and the jurors told simply that they have the right to determine the law and the facts under the direction of the court.

3. Such an instruction means only that the jurors have the right to determine, by a general verdict, the result of applying the law, as stated by the court, to the facts as they find them.

4. A judgment on a verdict of guilty of murder of the first degree will not be reversed because the court charged: "You are the judges of the facts in the case and it is your duty to apply the law as the court instructs you; you have the power to disregard our instructions but not the right under your oaths."

5. Although such an instruction does not warrant a new trial, the judge might well have omitted it as entirely unnecessary.

*Criminal law—Reputation of deceased—Self-defense—Evidence.*

6. On the trial of an indictment for murder, where it appears that defendant and deceased were the only persons present at the killing, and defendant sets up self-defense alleging he was attacked by the deceased with a deadly weapon, and introduces testimony to show that deceased was a bad and dangerous man, who would be likely to commit an assault such as that charged against him by defendant, the Commonwealth may introduce evidence of the reputation of the deceased as a peaceable and law-abiding person.

7. Such evidence establishes a relevant circumstance tending to prove the improbability of the deceased having done the unlawful acts of violence alleged against him by defendant.

*Appeals—Charge—General exception.*

8. A general exception to a charge does not bring up on appeal a misinstruction which is not a mistake of law.

Argued February 26, 1923. Appeal, No. 31, Oct. T., 1923, by defendant, from judgment of O. & T. Cambria Co., June T., 1922, No. 4, on verdict of guilty of murder of the first degree, in case of Commonwealth v. Mike Castellana. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Indictment for murder. Before EVANS, P. J.

The opinion of the Supreme Court states the facts.

Verdict of guilty of murder of the first degree on which sentence was passed. Defendant appealed.

*Errors assigned,* inter alia, were (1) portion of charge set forth in opinion of the Supreme Court, (2, 3) admission of testimony as to deceased's good reputation, and (4) sentence, quoting record and evidence.

*Percy Allen Rose,* of *Forest & Percy Allen Rose,* with him *Ivan J. McKendrick,* for appellant.—The jury was judge of the law and the facts under the direction of the court: Kane v. Com., 89 Pa. 522; Com. v. McManus, 143 Pa. 64; Com. v. Bednorciki, 264 Pa. 124.

The Commonwealth in a homicide case is not permitted on rebuttal to offer evidence of the good reputation of the

deceased unless defendant has previously offered evidence to establish the deceased's bad reputation: Com. v. Calandro, 231 Pa. 343; Com. v. Keller, 191 Pa. 122; Com. v. Straesser, 153 Pa. 451; Com. v. Weber, 167 Pa. 153.

*D. P. Weimer,* District Attorney, for appellee.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, April 9, 1923:

Defendant, Mike Castellana, appeals from a sentence on a conviction of murder of the first degree.

The homicide occurred March 16, 1922. The fact that appellant killed the deceased, Paul Siena, was not contested at trial. The defense was as follows: Siena and Castellana had known each other in a friendly way for at least six years, Edith Rizzo, a sister of the latter, having lived at one time with the former; during a walk these two men were taking together on the day of the homicide, Siena insisted Edith should return to him, and Castellana, while not opposing his companion's desire, expressed the opinion it would not be complied with; after more of such talk, Siena drew a revolver, pressed it against Castellana and said, unless the sister resumed her former life with him, he would kill defendant and the "whole Castellana family" (a threat which he wished the jury to believe deceased had repeated to third parties on other occasions, though uncommunicated to Castellana); defendant, in fright, ran away, and, having first picked up a club, entered a barn, to which he was pursued by Siena, with the pistol in his hand; a struggle followed, wherein Castellana, after striking Siena with the club, wrested the revolver from him, and then, according to defendant's testimony (which the verdict shows was not accepted by the jury), he shot and killed deceased in order to defend himself from what he says was a murderous assault.

The Commonwealth contended that Siena was not the aggressor; we find no testimony indicating that Castellana bore on his person any marks of violence, but the body of deceased showed a fracture about an inch long on the top of the head, a shot in the left breast, and the throat cut from ear to ear. This last mentioned injury defendant made no attempt to explain.

The first assignment directs attention to the following part of the charge: "You will note that we said you are the judges of the law and of the fact and while it is the business of the court to instruct you as to the law, you have the power to disregard our instructions as to what the law is. You are the judges of the facts in the case and it is your duty to apply the law as the court instructs you; as we said, you have the power to disregard our instructions, but not the right under your oaths."

While the trial judge might well have omitted the above instruction as entirely unnecessary, yet it presents nothing which warrants a new trial; only a general exception was taken to the charge, and no mistake of law appears in the part specified as error; moreover, we cannot conceive that this particular instruction could have done defendant any harm. However, as there is some confusion in our cases on the point in hand, we take this opportunity to discuss them.

In Kane v. Com., 89 Pa. 522, this court reversed judgment on a verdict of guilty in a criminal case, because the trial judge refused to charge that the jury "were judges of the law and the facts." We explained the Kane opinion in Com. v. McManus, 143 Pa. 64, 85, and, in the course of this explanation, said: "A judge who instructs a jury, in a criminal case that they may disregard the law as laid down by the court, errs as widely as the judge who gives them a binding instruction upon the law; it is the duty of the jury to take the best evidence of the law, as it is to take the best evidence of the facts [they must 'look to the court for the best evidence of the law, just as they look to the witnesses for the best evidence of the facts'] ;

when they refuse to do either, they disregard their duty and their oaths." Mr. Justice MITCHELL, in a concurring opinion (pp. 95-6), referring to the Kane case explained that the right to find a general verdict and the rule that no man can twice be put in jeopardy for the same offense, are the forces which give the jury in a criminal case the power to override the law as laid down by the trial judge, but such power is subject to the duty of the jury to take its law from the court as in other cases. Interesting historical information on the point in hand will also be found in this concurring opinion.

In Hilands v. Commonwealth, 111 Pa. 1, 5, Chief Justice MERCUR states that jurors in a capital case "are not only judges of the facts......but also of the law." This remark, however, was neither necessary to the decision of the case, nor, much less, intended as the statement of a guiding rule for the instruction of future juries; the language quoted occurs in the course of collateral judicial reasoning, and we have treated it as dicta: see Com. v. Bednorciki, 264 Pa. 124, 129, and Com. v. Bryson, 276 Pa. 566. In the last-mentioned case, we say, "It is the duty of the jury to take the law from the court to the same extent in a criminal case as in any other, and the trial judge can properly so instruct; this point is now settled in Pennsylvania."

Appellant argues, inter alia, that our ruling in Com. v. McManus, 143 Pa. 64, to the effect that "a judge [errs] who instructs the jury......they may disregard the law as laid down by the court," convicts the trial court in the present case of error; but to say to a jury it "may disregard" the law as laid down by the court, is far different from telling them, as the judge did in the present case, that they have the "power to disregard" but the "duty to apply the law as the court instructs you." We think, as stated in the above-mentioned opinion of Mr. Justice MITCHELL, it is better for the court to volunteer nothing to the jurors about their being judges of the law, and, if an appropriate request is made for instructions

along those lines, the constitutional language (article I, section 7) had better be adhered to and the jurors told simply that they have the "right to determine the law and the facts under the direction of the court," which means only that they have the right to determine, by a general verdict, the result of applying the law, as stated by the court, to the facts as they find them: Com. v. McManus, 143 Pa. 64, 96. Of course, in connection with instructions on the law as to the elements which constitute the degrees of murder, the court must inform the jurors that, if they find the accused guilty of murder, it is within their power to ascertain and fix the degree. There is no complaint that this was not done in the present case; nor, in fact, is any other criticism made of the charge.

Defendant testified, in support of his plea of self-defense, that deceased had made a wicked and unprovoked attack on him, with a deadly weapon, as set forth more fully at the beginning of this opinion. In rebuttal, the Commonwealth was permitted, over the objection of defendant, to introduce evidence of the reputation of deceased as a peaceable and law-abiding citizen, the trial judge stating, when he made his rulings in this regard, that he allowed the testimony because of the nature of the defense; these rulings are criticised in several specifications of error.

It is highly improbable the rulings in question affected the verdict, for the kind of evidence objected to was given by only two witnesses, one of whom admitted he really knew nothing of deceased's reputation, while, so far as the record indicates, little was made of the testimony of the other; nevertheless, we shall give full consideration to the guiding principles which govern the matters of complaint and which should control the question of the admissibility of the evidence here attacked.

One on trial for an offense against the criminal law is allowed to introduce evidence of his good reputation in any respect which has "proper relation to the subject-matter" of the charge at issue (Cathcart v. Com., 37 Pa.

108, 111) ; this is permitted on the theory that general reputation reflects character and a person with a good character for peaceableness, for example, would not in all reasonable probability commit an unlawful act of violence: Wigmore on Evidence, section 55, and cases there cited. Such evidence may of itself prove sufficient to acquit the accused (Hanney v. Com., 116 Pa. 322, 328), or it may create a reasonable doubt of guilt and thus acquit (Heine v. Com., 91 Pa. 145, 148) ; but to create or to clear up a doubt is "not the only office of evidence of good character,......it is substantive evidence to be weighed and considered in connection with the other evidence in the case": Com. v. Howe, 42 Pa. Superior Ct. 136, 144; see also Com. v. Aston (No. 1), 227 Pa. 106, 111. This kind of proof is allowed to the defendant in a criminal court because, as said in Hanney v. Com., supra, one accused of crime may be able to produce no evidence except his own oath and proof of good character to exculpate himself from the charge against him. On the same theory, when a prisoner sets up a defense, like the one at bar, wherein he charges the deceased with an act of personal violence against him, and thereby becomes the accuser and makes deceased the accused, why should not the Commonwealth, the only one that can answer for the accused deceased, in reply to this charge, have the same privilege as the defendant, when a similar charge is made against him, and be allowed to put in evidence the good reputation of the deceased (who in this instance is the accused) as a peaceable citizen?

The question just asked is raised by the assignments now under consideration, and, so far as the decisions of this court are concerned, is one of first impression. The general rule seems to be that the state cannot, in the first instance, offer evidence of deceased's reputation as a peaceable citizen; for, until attacked by the defense, his reputation is presumed to be good (Wharton on Homicide, 3d ed., section 269; Michie on Homicide, section 188 (7) ; 13 R. C. L., Homicide, section 219; 21 Cyc.

908) ; but when evidence sufficient to impeach the character of deceased and overcome this presumption is admitted on behalf of defendant, the state may, in rebuttal, offer proof of the peaceable character of deceased; Bishop, Criminal Procedure, 2d ed., vol. 2, section 612; Kelly v. People, 229 Ill. 81, 82 N. E. 198, 12 L. R. A. (N. S.) 1169. The real difficulty, wherein the courts take widely different views, is met in determining just what constitutes such an attack on the character of deceased as to permit this rebuttal testimony.

Although seemingly it is not the view of the majority of jurisdictions (note, L. R. A. 1916 A, 1245, 1261), yet in at least two states the plea of self-defense, accompanied by evidence tending to support it, has been treated as sufficient to open the door to rebuttal offers of deceased's reputation for peaceableness (Thrawley v. State, 153 Ind. 375, 55 N. E. 95; State v. Holbrook, 98 Ore. 43, 192 Pac. 640, 647) ; it is not necessary, however, to go that far in the present case.

Without regard to the rules which govern the admission of testimony to show the character of the deceased when such proofs are introduced to throw light on alleged apprehensions of a defendant caused by aggressions of the former, we are of opinion that evidence of the peaceable character of the deceased may be received, on an issue of self-defense, when the circumstances of a case so warrant, in order to show the improbability of his having made the aggressions attributed to him (and, where evidence is admitted on this theory, it is immaterial whether or not defendant had knowledge of deceased's good reputation: Wigmore on Evidence, section 63, and note 1), just as in the numerous cases where testimony of deceased's bad reputation was admitted, in support of a plea of self-defense, for the purpose of corroborating defendant's allegations of violent acts on the part of the former: People v. Lamar, 148 Cal. 564, 83 Pac. 993, 997; State v. Beird, 118 Iowa 474, 92 N. W. 694, 696; State v. Jones, 48 Mont. 505, 139 Pac. 441, 447.

The argument usually made against the admission of testimony of the character under discussion is that it would tend to open the door to proof of collateral matters, and thus confuse the jury and unduly extend the trial: State v. Reed, 250 Mo. 379, 157 S. W. 316, 318. A like argument might as well be made against permitting evidence of the good reputation of defendant; but it loses force in either case when we remember that such testimony is properly confined to the mere fact of general reputation, the courts refusing to permit proofs of particular acts.

To return to the case in hand, the prisoner's sole plea was the affirmative one of self-defense, and to prove this, which he was obliged to do in order to secure an acquittal, he became the accuser of the deceased, charging that the latter, without provocation, attacked him with a deadly weapon; to sustain this allegation, he produced a number of witnesses, who, while not expressly called to establish the bad reputation of Siena, all gave testimony tending to show, and with the evident purpose of proving, that as a matter of fact deceased was a bad and dangerous man who would be likely to commit an assault such as that charged. Surely, on this state of the proofs, the fact that Siena was a peaceable, law-abiding citizen was a relevant circumstance tending to prove the improbability of his having done the unlawful acts of violence alleged against him by defendant, and therefore it was proper to admit the evidence assigned as error. At least, this rule ought to prevail in a case like the one at bar where, because defendant and deceased were the only persons present, no actual witness to the occurrence under investigation could be called by the Commonwealth, which was obliged to depend for its entire proofs on the (somewhat self-serving) confessions of the prisoner, certain points made against him on cross-examination, and the physical facts in the case.

The decisions from other jurisdictions are cited only as showing rulings on, or discussions of, the particular

points in connection with which they are respectively mentioned, and are not to be understood as adopted generally by us.

It must be admitted that reported instances are rare where evidence of the kind here received was admitted on the offer of the Commonwealth; we are not prepared to hold, however, that, under the peculiar circumstances of this case, the admission of such testimony presents reversible error. It remains but to say, we have read the evidence and think it fully warrants the verdict; for this reason and those already given, the assignments of error are overruled.

The judgment is affirmed and the record remitted to the court below for the purpose of execution.