# Commonwealth v. Jones. Appellant.

*Criminal law—Murder—Self-defense—Evidence—Character of deceased—Threats—Points for charge.*

1. In a murder case, where defendant's plea is self-defense, and evidence is introduced on behalf of defendant to show that deceased was a bad and dangerous man, and one likely to commit the assault charged as giving rise to the homicide, the Commonwealth may produce witnesses to show that, as a matter of fact, deceased was a sober, law-abiding and peaceable citizen.

2. Where a point offered by defendant in a murder trial is so drawn that it will serve to confuse the jurors rather than enlighten them, it is properly refused.

3. Where, in a murder trial, threats by defendant against the life of deceased are testified to by witnesses, and defendant claims the threats were made in jest, a point to the effect that the jury "must find that these statements did not amount to threats as understood in law," is properly refused, where the judge had not explained what "threats as understood in law" were, and no request had been made to him to give such explanation.

4. In such case, defendant cannot request the court to charge that, if the jury finds the threats were not made maliciously, then they must find that the mental element necessary for a first degree murder is not present, inasmuch as such an instruction would have withdrawn from the jury the consideration of the events that took place at the time of the killing, such as the use of a deadly weapon twice shot at vital parts of the body.

5. The court may properly qualify an insufficiently drawn point relating to self-defense, and especially so where it has fully and properly covered the subject of self-defense in its general charge.

*Appeals—Assignments of error—Quoting answer but not point —Murder.*

6. An assignment of error to an answer to a point is insufficient, where only the answer, and not the point is incorporated in the assignment.

Argued May 4, 1925. Appeal, No. 304, Jan. T., 1925, by defendant, from judgment of O. & T. Phila. Co., Oct. T., 1923, No. 470, on verdict of guilty of murder of the first degree, in case of Commonwealth v. Mattie Jones. Before Moschzisker, C. J., Walling, Simpson, Sadler and Schaffer, JJ. Affirmed.

Indictment for murder. Before Davis, J.
The opinion of the Supreme Court states the facts.
Verdict of guilty of murder of the first degree upon which judgment of sentence was passed. Defendant appealed.

*Errors assigned* were various rulings and instructions, quoting record.

*James Austin Norris,* with him *Mercer L. Lewis,* for appellant.—The Commonwealth in a homicide case is not permitted to offer evidence of the good reputation of the deceased unless defendant has previously offered evidence to establish the deceased's bad reputation: Kelly v. People, 82 N. E. 198; People v. Bezy, 67 Cal. 223; People v. Webster, 139 N. Y. 73; Childers v. Com., 171 S. W. 149, 152; Parker v. Com., 96 Ky. 212; Com. v. Colandro, 231 Pa. 343; Com. v. Moon, 264 Pa. 63; Com. v. Weber, 167 Pa. 153; Com. v. Jones, 269 Pa. 589.

The Commonwealth in a homicide case is not permitted to offer evidence of the good reputation of the deceased for sobriety: Pauli v. Com., 89 Pa. 432; Com. v. Snyder, 85 Pa. 519; Com. v. Ferrigan, 44 Pa. 386; Burnett v. People, 204 Ill. 208; Abbott v. People, 86 N. Y. 460.

*Charles F. Kelly,* Assistant District Attorney, with him *Samuel P. Rotan,* District Attorney, for appellee.— Proof of the general reputation of deceased is admissible in a homicide case where a plea of self-defense is set up and the reputation of the dead man assailed: Com. v. Costellana, 277 Pa. 117.

A trial judge is not bound to adopt the language of points, but may choose his own form of expression, and if it expresses the law fully and with substantial accuracy, nothing further is necessary: Com. v. Lewis, 222 Pa. 302; Com. v. Evans, 70 Pa. Superior Ct. 534; Com. v. Barner, 199 Pa. 342.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, May 25, 1925.

Defendant appeals from a sentence on conviction of murder in the first degree.

The homicide occurred in the morning of September 22, 1923. On the previous evening, defendant, Mattie Jones, and the deceased, William Martin, with whom the former had been living for about three years prior to the tragedy here involved, attended a party at the residence of a mutual friend. Defendant wanted deceased to return with her to their common abode rather early in the evening, and, on his refusal to do so, she went alone, taking his hat and coat with her. Later she came back to the house where the party was being held and again asked Martin to go home with her; when he refused, she remarked, in the hearing of several witnesses, "If you do not come now, when you do come home the undertaker is going to take you out." Defendant again went to their residence without deceased, and, when another man, who had been at the party, passed, she invited him in to inquire about it and to find out whether he had left Martin there, saying, "I am going to kill him when he gets home." There was also testimony by several witnesses of statements made by defendant to the effect that she intended to kill

Martin, because of his attentions to other women. No one other than defendant was present when the deceased returned from the party to the room occupied by them. Later that morning she reported at the police station, carrying in her hand a pistol, wrapped in paper, containing several undischarged cartridges and three which had been fired. She surrendered herself, saying that she had killed her husband; a written confession was taken down by the sergeant of police, who produced it at the trial, wherein defendant said that Martin had come home at half past two in the morning, and when she questioned him concerning a woman with whom he had been dancing, he told her that she would have to get out, to which she replied that she was "not going anywhere," whereupon Martin threatened her with a revolver; that he put the revolver under his pillow and went to sleep, but later arose and again ordered her out of the house, saying if she did not go he would send her to hell. Defendant states Martin then got his revolver and threatened to put it down her throat; that he pulled her out of bed, and "we started to tussle. He had the revolver. It went off." At trial, however, she told a somewhat different story, claiming the revolver was on a trunk, and, after deceased had struck, beaten and threatened to kill her, they both rushed for the weapon at the same moment, she obtaining it and firing several shots, in order to protect herself from harm which she felt he intended to do her. Defendant said she did not know how many times the pistol was discharged, or where deceased was when hit, but the coroner's physician, a man of long experience with gunshot wounds, who had made the postmortem examination, testified that one bullet had entered Martin's back to the right of the eighth rib, another had struck him behind the right ear, passing through his head, and that, in his opinion, the pistol had not been discharged at "very close range."

The printed record indicates the Commonwealth's theory at the trial was that defendant took the revolver from under Martin's pillow, and, in a passion of jealousy, shot him from behind while he slept, and the case of the accused was that she killed in self-defense.

To sustain her case, the prisoner testified, and brought other witnesses to prove, that, for at least a year before the date of the homicide, deceased had "fought with her all the time," beating her so frequently that she had marks and bruises all over her body, and was obliged to leave him on several occasions. She asserted that Martin would come home drunk, and, the least thing she said to him, he would start to "fuss and fight" with her; that, if she talked back, he would hit her in the eye with his fist. One of her witnesses testified that defendant repeatedly came to her with complaints about her troubles, saying that the deceased was "very cruel to her and had beaten her and was drunk." This witness stated that she had seen Martin drunk "time and time again" during a period of 'years,—had "oftentimes seen him full of whiskey." All of this testimony was general in character, and evidently introduced to show the evil disposition of the deceased.

The trial judge, in ruling on a point of evidence, gave his understanding of the defense thus: "In your opening to the jury you [counsel for the prisoner] stated your defense would be self-defense. The defendant has testified that the deceased was a bad man in that he assaulted her 'several times and blackened her eyes. Several of the witnesses testified that he was a man of that type, a bad and dangerous man......and the stepfather of Mattie Jones testified he was a man who drank to excess......; *all of which was offered,* I take it, *to show that he was a man likely to commit the offense which this Jones woman testified he had committed."* To demonstrate the correctness of the trial judge's understanding of the defense, and of the purpose with which the testimony to sustain it,—concern-

ing the long-continued and persistent misconduct of
Martin,—was introduced, we may quote the words of
defendant's counsel, where he stated that the testimony
in question was offered to show deceased was "the likely
aggressor in this new provocation which arose on the
morning on which he was killed." This can mean only
what the trial judge said, that the testimony was offered
to prove Martin had a violent disposition; that he was
a man of such a character the jury might well believe
he made the assault on defendant against which, the
latter claims, she believed, at the time, it was necessary
to defend herself, even to the extent of killing him.

To meet the testimony introduced by defendant for
the purpose of proving that Martin was a bad and dan-
gerous man, and one likely to commit the assault charged
by her as giving rise to the homicide (all of which was
too general to be met by specific denials), the Common-
wealth called several witnesses to show that, as a matter
of fact, deceased was a sober, law-abiding, peaceable
citizen. The first and second assignments relate to rul-
ings admitting this testimony over the objection of de-
fendant. What we have already outlined, concerning
the facts of the case and the trial in the court below,
is sufficient to sustain the ruling complained of, under
the law as recently stated by us in Commonwealth v.
Castellana, 277 Pa. 117, 125, where, after discussing the
relevant authorities, we said: "The prisoner's sole plea
was the affirmative one of self-defense, and to prove this,
which he was obliged to do in order to secure an acquit-
tal, he became the accuser of the deceased, charging that
the latter, without provocation, attacked him with a
deadly weapon; to sustain this allegation, he produced
a number of witnesses, who, while not expressly called
to establish the bad reputation of [the deceased] all
gave testimony tending to show, and with the evident
purpose of proving, that as a matter of fact deceased
was a bad and dangerous man who would be likely to
commit an assault such as that charged......On this

state of proofs, the fact that [deceased] was a peaceable, law-abiding citizen was a relevant circumstance tending to prove the improbability of his having done the unlawful acts of violence alleged against him by defendant, and therefore it was proper to admit the evidence assigned as error."

The third assignment complains because the court below refused to affirm the following request for charge submitted by defendant: "Even if the jury finds that Mattie Jones, the defendant, did say at various times that she was going to kill Willie Martin, or words to that effect, such as, 'when he came home, the undertaker would take him out,' if the Commonwealth has not proved beyond a reasonable doubt that these statements were seriously made and not made in jest, then the jury must find that these statements did not amount to threats as is understood in law." In disposing of this complaint, it is sufficient to say that, since the trial judge had not explained to the jury what "threats as is understood in law" are, and as the court was not requested to give such explanation, to have affirmed the point as drawn, with that expression therein, would have served to confuse the jurors rather than to enlighten them; it was properly refused. Moreover, the trial judge, in his general charge, told the jurors that, if the alleged declarations of defendant, to which this point refers, were in fact uttered, it would be for them to determine from all the evidence, whether they were made in jest or in earnest; and also, in answer to several other points, the jurors were informed that, even if they believed the so-called threats to have been made, yet it would be for them to find whether the accused killed in pursuance thereof or for the purpose of defending herself against an assault by deceased, and the burden was on the Commonwealth to prove beyond a reasonable doubt that she did, in point of fact, kill in pursuance of the threats, any doubt on that score to be decided in favor of the

prisoner. Under all the circumstances, we see no merit in the third assignment.

The fourth assignment complains of the refusal to affirm a point which reads thus: "If the jury does not find beyond a reasonable doubt that Mattie Jones made maliciously and with an intent to carry them out, these statements that she would kill Willie Martin and other statements to that effect, offered here in the evidence, then the jury must find that the mental element necessary for a first degree murder is not present in this case, and the jury cannot, therefore, render such a verdict." In discussing this assignment, counsel for the Commonwealth well state: "The defendant's sixth point ......was properly refused, since its affirmation would have taken from the jury the evidence of the events that took place at the time of the shooting, especially the fact that the defendant used a deadly weapon and shot the deceased twice, the first shot taking effect in the back, the bullet passing forward and to the left, going through the lung and heart and coming out in front, doing great damage to the organs, and the second shot, above and behind the right ear, doing very severe damage to the brain."

The fifth assignment criticizes the answer to defendant's fourth point wherein she asked the following instruction: "If the jury finds that Mattie Jones, at the time [she] fired the shots that caused the death of Willie Martin, reasonably believed that her life was in immediate danger or that she was in danger of serious bodily harm, and that she could only defend herself in that way, the jury's verdict should be 'Not Guilty.'" The trial judge affirmed the point, but added: "That is to say, gentlemen, if you reach the conclusion under the law as I have given it to you on self-defense, that there was no other course to save herself." We might dismiss this specification of error with the statement that, since counsel did not incorporate the point itself therein, but merely gave the answer complained of, the assignment

does not comply with our rules; but it is to be noted that the reply in question refers the jury to the law, as the trial judge gave it, on self-defense, and, when the charge is read, it will be seen that it contains full instructions on the right of one attacked to defend himself, the judge there stating, inter alia, that, "if there be a reasonable apprehension of imminent danger, so imminent and of such a character that retreat or delay may increase it, then the assaulted party would be justified in defending [herself] at once," which was going as far in defendant's favor as could be asked. Taking into consideration the words of the request and the prior charge of the court, we see no error in the answer.

The last assignment complains of the sentence and of the fact that the court below overruled defendant's motion for a new trial. What we have said in disposing of the prior assignments virtually covers this one, but it may be added that defendant has been convicted of murder of the first degree by two juries, before different judges, both of which verdicts were sustained by the court below in banc, the first being reversed by us on appeal in Commonwealth v. Jones, 280 Pa. 368, only because of material trial errors. In the performance of our statutory duty we have read the evidence and are obliged to state that it sustains the verdict. The case was correctly tried and submitted to the jury in a charge which amply protected every right of appellant.

The assignments are all overruled, the judgment is affirmed, and the record is remitted to the court below for the purpose of execution.