## M. K. HEFFINGTON v. THE STATE.

### No. 2003. Decided December 13, 1899.

**1. Homicide—Evidence—Threats by Deceased, No Threatened Party Being Named.**

The rule, now well settled, is that general threats, not directed by name to the party killed, and not shown by other testimony to have been directed to him or to have embraced him, are not admissible in evidence. And this rule applies to evidence of threats made by the deceased as well as to those made by defendant.

**2. Same—Uncommunicated Threats.**

Where the deceased two or three hours before the homicide was heard to say, "I am going to cut his God-damned ·guts out," but was not heard to name the person he referred to, the evidence was inadmissible, and more especially so where the threat was not commnicated to defendant.

**3. Murder—Evidence—Dangerous Character of Deceased.**

On a trial for murder, where the issue is, whether the homicide was committed in malice or self-defense, it is proper to admit evidence of the general character of deceased as being a dangerous man. But it is not permissible, under this rule, to show particular acts, much less to show the commission of other offenses committed by deceased long prior to the homicide and in nowise connected with the charge for which defendant is being tried.

**4. Same.**

Our statute, Penal Code, article 713, authorizing proof of the character of deceased in connection with threats made by him, appears to limit such proof to the general character of deceased as to whether he is a violent and dangerous man, and excludes the substitution of any other evidence to prove his character in that respect.

**5. Manslaughter—Evidence Sufficient.**

See opinion of the court for evidence summarized, which is held to amply support a verdict and judgment for manslaughter.

APPEAL from the District Court of Lee. Tried below before Hon. ED. R. SINKS.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The indictment charged appellant with the murder of W. M. Mundine, on the 22d day of April, 1899, by shooting him with a pistol.

The opinion states the essential facts in the case.

The defendant's special requested instructions numbers 1 and 2, which are referred to in the opinion, and which were refused by the trial court, are as follows, viz.:

"Although you shall believe that the defendant, M. K. Heffington, may have wrongfully begun the difficulty, and may have made the first demonstration, and that which brought the difficulty, yet if you should further believe that he subsequently abandoned the difficulty and endeavored to escape from the scene thereof, and that deceased followed after and pursued him with a knife, and that it reasonably appeared to the said Heffington, looked at from his standpoint, that he was in danger of serious bodily injury, and that under these circumstances he shot and killed deceased, you will acquit him.

"The defendant herein is charged with unlawfully killing William

Mundine by shooting him with a pistol. If you believe from the evidence that at the time the fatal shot was fired it reasonably appeared to the defendant, looked at from his standpoint, that he was in danger of serious bodily injury from an attack from the said Mundine, then you will find a verdict in favor of defendant, even though you might believe that after the fatal shot was fired the defendant assaulted the said Mundine further than was necessary to his defense, for the reason that the evidence adduced by the State tends to show that when the fatal shot was fired the deceased was advancing upon the defendant with a knife, and that after the fatal shot was fired defendant struck deceased a number of times with his pistol when he was in no danger from deceased, actual or apparent, and the evidence tending further to show that after the fatal shot was fired he may have fired other shots when it was not reasonable to believe he was in danger; this error being intensified by the fact that the indictment herein charges, in an additional count, that the death of deceased was occasioned by striking him with a pistol, the proof conclusively showing that the only mortal wound inflicted upon deceased was that occasioned by the pistol shot."

*Orgain, Garwood & Bowers,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.—Did the court err in excluding the purported threat of the deceased to the effect that the deceased was overheard to say, about 12 or 1 o'clock on the day of the homicide, which occurred about 3 or 4 o'clock later, that, "I'm going to cut his God damn guts out?" The testimony does not show in any particular that the threats referred to defendant. It is submitted by the State that the same were too remote and for that reason inadmissible. Strange v. State, 38 Texas Crim. Rep., 280; Godwin v. State, 38 Texas Crim. Rep., 466; Holley v. State, 39 Texas Crim. Rep., 301; Cardwell v. Commonwealth, 46 S. W. Rep., 705; Tolbert v. State, 8 Texas Crim. App., 316. The circumstances failed to show in any particular that deceased referred to appellant, and therefore the threats are not sufficiently specific to show their relevancy.

The evidence as to the fact that deceased had been guilty of a daring homicide, and that it was currently believed that he had so perpetrated that crime, was inadmissible. The Childers case is not in point. Childers was a stranger in the community where the deceased lived and could not be chargeable with notice of his victim's general reputation. This is not the case of appellant. The State submits that proof of the dangerous character of deceased must be determined by general reputation. Particular acts indicating character are not admissible. Harrell v. State, 39 Texas Crim. Rep., 204; Darter v. State, 39 Texas Crim. Rep., 40; Brownlee v. State, 3 Texas Crim. App., 255.

Appellant was permitted to testify that he knew the deceased's character; this was before the jury, as well as particular incidents communicated to him. The testimony offered was not a communication

made to appellant, but independent facts sought to be shown. Hence this rule in the Childers case does not apply. Childers v. State, 30 Texas Crim. App., 160.

The law of abandoning the difficulty should have been charged if the facts raised the issue. It is submitted that the facts show a continuous conflict from its beginning to its conclusion, and the issue invoked is not in the record. Downey v. State, 33 Texas Crim. Rep., 380; Roberts v. State 30 Texas Crim. App., 291; Slade v. State, 29 Texas Crim. App., 381.

HENDERSON, JUDGE.—Appellant was convicted of manslaughter, and his punishment assessed at two years confinement in the penitentiary, hence this appeal.

The killing for which appellant was indicted occurred at Lexington on April 22, 1899. Deceased and appellant had a casual meeting in said town. It appears that E. W. Rowland and appellant were standing on the gallery of Wheatley's saloon, which is on the north side of the public square, and were engaged in conversation. Mundine, the deceased, came up, and also entered into the conversation. Deceased was standing with his left hand on Heffington's shoulder. Something was said by Heffington to Rowland about his staying in town that night to attend a party, appellant insisting that he should remain to attend the party. About that time he asked deceased if he was going to remain in town that night. Deceased replied, why should he remain? and stated in that connection to appellant that there was no love between the Heffingtons and Mundines, to which appellant replied that there were a great many of the Mundines for whom he had great respect, and that he had always respected him (deceased) until now. Some of the witnesses say that Mundine replied to this, "You are a liar." At this juncture appellant knocked deceased's left hand off his shoulder, and immediately began drawing his pistol, and began backing off from deceased, who followed him up; according to the State's theory, catching at him, or striking at him with his hands only. According to the defendant's theory, deceased at the time had his knife in his hand,—partially opened, according to some, and opened, according to others,—striking at appellant. When appellant had backed about fifty or sixty feet past the stores of Womack and Griffith, to the steps that lead up to Ephraim's gallery, appellant began firing at deceased,—fired two or three shots at him in rapid succession. At this point deceased appeared to stumble and fall as he was about going up the steps in pursuit of appellant. After he was down appellant fired at him once or twice more, striking deceased below the right nipple, the ball glancing downward along his ribs, entering his stomach just below his ribs (this being the wound which subsequently, thirty-six hours afterwards, caused the death of deceased). After deceased fell, appellant struck him over the head several times with his pistol, inflicting severe flesh wounds on his head. About this time Chap Mundine, a relative of de-

ceased, ran up with a chair, and either struck, or attempted to strike appellant, who then desisted in his assault on deceased, and pursued Chap Mundine into Griffith's store, where defendant was arrested by Rowland, the constable. The State's theory from this presentation of the case was to the effect that appellant was guilty of murder in the second degree, because there was no self-defense in the case, and there was no adequate cause to produce manslaughter; or, at least, it was manslaughter, if adequate cause was shown, and there being no self-defense in the case. The theory of the defendant, on the other hand, was that deceased, at the time of the homicide, was pursuing him with a deadly weapon, and he had reasonable cause to believe that his life was in danger, or his person in danger of serious bodily injury, and that he had a right to kill deceased in self-defense.

Appellant's first bill of exceptions questions the action of the court in excluding certain testimony, showing as he claims, a threat by deceased against appellant. The bill shows that appellant offered to prove by one Scott Eckman that some two or three hours before the homicide he saw deceased in the town of Lexington, on the opposite side of the square from where the homicide occurred, talking with some one, whom he did not know, and that he heard deceased say, "I am going to cut his God damn guts out;" that he did not hear him say what person he referred to. The State objected to said testimony upon the ground that it did not disclose what person Mundine referred to when he used the expression. This is substantially all that the bill shows in regard to the excluded testimony. This question was thoroughly discussed in Godwin v. State, 38 Texas Criminal Reports, 466, and Holley v. State, 39 Texas Criminal Reports, 301, and the rule was there laid down, in accordance with the authorities, that general threats, not directed by name to the individual killed, and not shown by other testimony to have been directed to him, or have embraced him, were not admissible. And see Strange v. State, 38 Texas Crim. Rep., 280; Cardwell v. Commonwealth (Ky.), 46 S. W. Rep., 705. The evidence here offered was not of threats by defendant against deceased, but of threats by deceased against defendant, which were offered to be proved; but the same rule applies in either case. Recurring to the bill in regard to the excluded testimony, it absolutely fails to show, or even to suggest, that deceased, in the remarks attributed to him, alluded to defendant. If it reasonably appeared that deceased, in said expression, referred to defendant, there is no question that said testimony ought to have been admitted. While we are controlled in this matter by the bill alone, if we recur to the testimony, we are still left in the dark as to who was meant. The only testimony remotely bearing on this point is that appellant, several months before the killing, had a difficulty with a relative of deceased, and he is shown to have remarked on the occasion of the homicide that there was no good feeling between the Mundines and the Heffingtons. This is all that we recall from the record that has a remote bearing on this matter. The parties appear otherwise to have been friendly. To

admit testimony of a general threat, under the circumstances of this case, and which was not even communicated to defendant, it appears to us would be opening wide the door to threats indiscriminately; and such a rule does not find support in any of the authorities.

Defendant offered to prove by August Schneider that in 1885 he was present at Fedor, in Lee County, and saw deceased murder, for the purpose of robbery, two Germans, to wit, Charles Keifel and William Mrosk; and he offered to prove, in that connection, the circumstances indicating an atrocious murder on the part of deceased for the purpose of robbery. Appellant also offered to prove by same witness, and others, that it was currently and generally reported and was generally believed throughout Lee County, and in the community where defendant, Heffington, resides, that William Mundine, deceased, murdered the two unarmed Germans before mentioned while attempting to rob them. All of this testimony was objected to on the part of the State on the ground that the same was irrelevant, and was in nowise connected with the murder for which appellant was on trial. Appellant, in support of his contention that said testimony was admissible, cites us to Childers v. State, 30 Texas Criminal Appeals, 193, and 2 Bishop's New Criminal Procedure, sections 609, 610. The Childers case cites in its support the same sections of Bishop referred to by counsel. But Mr. Bishop is speaking of character, not of individual acts; for, following the articles quoted, he says: "Here, as there, character does not consist of individual acts, and they can not be shown in evidence. While differing from reputation, it is evidenced thereby, so that a witness should testify what others say of it, and not to his own opinion thereof." 2 Bish. New Crim. Proc., sec. 617, and authorities there cited. And see 1 Bish. New Crim. Proc., sec. 1117. The excluded testimony in the Childers case, supra, was that of Walling and Porter. By reference thereto it will be sen that appellant offered to prove the statements of the deceased, Draper, to said witnesses of certain acts of his which impressed them that he was a dangerous and desperate man, and that just before the killing they recounted these acts in detail to defendant, Childers, and informed him that they believed they were true, and that he impressed them that he was a dangerous and desperate man. It will be noted that this conversation of the witnesses with deceased and its impartation to defendant was a short time before the homicide, that defendant was a comparative stranger in the town, and that deceased was unknown to him. In our view, under the circumstances of the case, that part of the testimony with reference to what the witnesses told appellant as to deceased being a desperate and dangerous man was admissible under the following general rule laid down by Mr. Wharton: "It is admissible, both as to defendant and deceased, to prove that statements had been made to each of a character making it prudent for him to go armed. In fine, any facts, hearsay or not, which go to explain the condition of a person's mind, when such condition is at issue, is admissible." Whart. Crim. Ev., p. 23, sec. 254.

Again: "Whenever the issue is whether one honestly believes himself attacked, he can put in evidence any fact that would tend to prove the bona fides of his belief." Whart. Hom. sec. 606. All the authorities, so far as we have examined, concur in the proposition that, where the issue is whether the homicide was committed in malice or self-defense, it is proper to admit evidence of the general character of deceased as being a dangerous and quarrelsome person. In some cases it is admissible in order to aid in determining the question as to who was the assailant in the difficulty. But it is not permissible under this rule, to show particular acts, much less to show the commission of other offenses committed by deceased in nowise connected with the charge for which he is being tried. See Whart. Hom., secs. 610-628, inclusive; Rice, Ev., secs. 376-379; Steph. Dig. Crim. Law, art. 56; Underh. Ev., p. 386; 1 McClain, Crim. Law, sec. 607, and a long list of cases cited in said authorities. And see Wright v. State, 43 Texas, 170. We quote from Mr. Rice, who cites Taylor on Evidence, as follows: "To thoroughly comprehend the scope of this rule, we must understand the reasons upon which it is founded, which are the following: (1) Every person is supposed to be capable at any time of sustaining his general reputation, but it would be unreasonable to expect anyone to be prepared, without special notice, to answer an assault on his character, imputed by particular acts of bad conduct. (2) To allow such evidence, moreover, would lead to the mischief of raising any number of collateral issues, the trial of which might be almost interminable, and otherwise objectionable, as diverting the mind of the jury from the main issue." Rice, Ev., sec. 376. And see Boon v. Weathered's Adm'r., 23 Texas, 675. The rule above stated has been followed in this State, without a break, so far as we are advised. See Horbach v. State, 43 Texas, 242, and Bingham v. State, 6 Texas Crim. App., 169.

Appellant, however, contends that the Childers case, 30 Texas Criminal Appeals, 160, contains a new doctrine, to wit, that evidence of particular acts indicating that deceased was a dangerous man are admissible under the general rule that evidence of the general reputation of deceased as being dangerous is admissible. We do not believe that a fair analysis of the Childers case will sustain the proposition contended for by appellant. In that case the evidence of Walling and Porter, which was communicated to defendant shortly before the homicide, though hearsay in a sense, was admissible because it was a relevant and pertinent fact tending to show that Childers honestly believed himself attacked by Draper at the time he slew him, and that his life was put in danger by his acts and conduct at that time. If the doctrine contended for by appellant be correct, then the introduction of any number of crimes committed by a deceased person, having no bearing or connection with the case on trial, could be introduced in evidence; and thus not only would the prejudice of the jury be excited against the deceased, but they would necessarily have to turn aside to try any number of distinct issues. Mr. Bishop lays down the true doctrine on this

subject as follows: "In general terms, prior acts of the deceased, when connected with the transaction in which his life was taken, are competent in explanation of, the killing,—as that the day before he had been quarrelsome and violent, had attacked a third person, and, on defendant's interference to separate them, he had threatened him." 2 Bish. Crim. Proc., sec. 618. It can not be claimed here that the acts,— that is, the killing of the two Germans some fourteen years before this homicide occurred,—had any connection whatever with it; but it was proposed to adduce evidence of this transaction in all of its horrid details in lieu of and as a substitute for evidence of the general character of deceased as being a dangerous and quarrelsome man. And it is urged by counsel for appellant that this proof was absolutely necessary in order that the jury might properly weigh the testimony concerning the difficulty in which appellant killed deceased, Mundine, and ascertain whether or not he acted in self-defense; that is, the contention is that the jury must have the full benefit of all the details of a homicide that occurred fourteen years before, in which deceased was engaged, which would involve a trial of that case before the jury, in order to determine whether or not, in the case on trial, appellant acted in self-defense. If this be the rule, then in every case a defendant need not resort to proof of general character, but, in the first instance, he could resort to particular acts of the deceased, and prove them, in order thus, by indirection, to establish his character. We do not understand this to be the rule of law. Such a rule, in our judgment, would be fraught with great confusion, would create interminable delays in the trial of cases, and would be calculated to paralyze the enforcement of law by exciting the prejudices of juries against a dead man. Mundine was not a stranger in that community, nor was the defendant. If deceased was a quarrelsome and dangerous man, he had certainly earned that reputation in that community, and this fact appellant would have been authorized to prove by competent witnesses, in order to aid the jury in determining whether or not, at the time he shot deceased, he acted out of malice or from motives of self-defense.

In addition to what has been said, it would seem that our statute on the subject of threats, in connection with this character of evidence, prescribes the rule. Article 713, Penal Code, after authorizing proof of threats in justification of homicide, proceeds as follows: "In every instance where proof of threats has been made, it shall be competent to introduce evidence of the general character of the deceased. Such proof shall extend only to an inquiry as to whether the deceased was a man of violent or dangerous character, or a man of kind and inoffensive disposition, or whether he was such a person as might reasonably be expected to execute a threat made." This statute, which treats of self-defense in connection with threats, authorizes proof of general character, and would appear to create a limitation on any other character of proof. Certainly it appears to us that it would exclude

41st Crim. Rep.—21

the substitution of another character of evidence for proving the character. More especially does this occur to us to be true when all the authorities proscribe any other character of proof. So the proposition here of appellant is, not to invoke a rule of evidence outside of the statute, but to create a new rule of evidence in the face of the statute. And see Bingham v. State, 6 Texas Crim. App., 169. It may be true that in any given case every fact that would serve to explain the condition of a man's mind, when such condition is at issue, is admissible; but such facts must be proven in accordance with the known rules of evidence, and not in contravention of such rules; and, if the evidence here excluded had been admitted, it would have been in violation, as we understand it, of the doctrine laid down by all the authorities on this subject; and we do not believe the court erred in this action.

Appellant complains that the court erred in refusing to give his special charge number 1, in presenting appellant's theory with reference to an abandonment of the difficulty by him after having brought it on in the first instance. We think the court's charge on self-defense was applicable to the facts of this case. Moreover, we fail to find in the record any cessation of the difficulty after it once began. If appellant's theory be true, he merely retreated in the face of the attack of deceased, who was rushing upon him with a drawn knife. This phase of the case was given to the jury.

Nor do we believe there was any occasion for the court to give appellant's second requested instructions. The court gave the first part of said charge, but did not instruct the jury with reference to the assault after the shooting. This was not necessary, as there was no pretense that this assault caused the death of the deceased. The jury could only look to the same as part of the res gestae of the difficulty.

Appellant insists that this case should be reversed because the evidence does not sustain the verdict of the jury. We have examined the record carefully, and, under the issues presented by the evidence, which were fairly submitted to the jury, we believe they were authorized to find the verdict they did. The judgment is affirmed.

*Affirmed.*

BROOKS, Judge.—I hereby concur in the conclusion reached.

Davidson, Presiding Judge, absent.