## Bo. BARRETT v. THE STATE.

### No. 5467. Decided October 29, 1919.

**1.—Murder—Manslaughter—Charge of Court—Provocation.**

Where, upon trial of murder, the defense evidence showed insult to defendant's wife by the deceased, and the court's charge on manslaughter instructed the jury that the provocation must arise at the time of the commission of the offense and that the passion is not the result of a former provocation, the same was reversible error.

**2.—Same—Manslaughter—Provocation—Charge of Court.**

Upon trial of murder, where the defendant showed insulting conduct by the deceased towards defendant's wife, the charge of the court in submitting manslaughter instructing the jury that the act must be directly caused by the passion arising out of the provocation, if any, at the time of the killing and not from some other provocation, or a provocation given by some person other than the party killed; there being no evidence of a provocation given by some other person than the deceased; although the court later practically instructed the jury in the language in the statute, the same was reversible error.

**3.—Same—Adequate Cause—Insulting Conduct to Female Relative.**

Where the evidence raised the issue of insulting conduct to a female relative, the court should have instructed the jury that this is adequate cause under the statute, and that this should determine whether a sufficient passion was engendered, and it was not for them to believe whether the adequate cause existed or not, for this must be looked to from defendant's standpoint.

**4.—Same—Manslaughter—Charge of Court—Self-Defense—Apparent Danger.**

Where the court's charge, with reference to the demonstration by the deceased, applied the same to the offense of manslaughter instead of self-defense, and limited the right of self-defense to real attack instead of apparent danger the same was reversible error. Following Benson v. State, 51 Texas Crim. Rep., 367.

**5.—Same—Self-defense—Charge of Court—Actual Danger—Apparent Danger.**

Where, upon trial of murder, the evidence did not raise the issue of actual danger but that of apparent danger, and the court confined the charge to actual danger and refused a requested charge applicable to the facts of the case, the same was reversible error. Following Phipps v. State, 34 Texas Crim. Rep., 560, and other cases.

**6.—Same—Evidence—Reputation of Deceased—Specific Instances.**

Where, upon trial of murder, the defendant placed the reputation of deceased as to chastity in issue, and that the same was bad and the State met this by showing that it was good, the defendant should have been permitted on cross-examination of the State's witnesses to show that they had heard of the prior trouble the deceased had had with reference to the wife of a third party, and that this was talked about in the community and even got into the church.

**7.—Same—Evidence—Reputation of Deceased.**

Where the State was permitted, over objection of defendant, to place in evidence the general reputation of the deceased as a peaceable man, when defendant had not raised this issue, the same was reversible error; especially where the State sought to bolster up this line of testimony.

Appeal from the District Court of Franklin. Tried below before the Hon. J. A. Ward.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Wilkinson & Davidson,* for appellant.—On question of reputation of deceased when defendant has not raised this issue: Moore v. State, 79 S. W. Rep., 565; Melton v. State, 83 id., 822; Gregory v. State, 94 id., 1041; Wakefield v. State, 94 id., 1046.

On question of adequate cause and charge on manslaughter: Williams v. State, 7 S. W. Rep., 333; Melton v. State, 83 id., 822; Holcumb v. State, 54 Texas Crim. Rep., 486, 113 S. W. Rep., 754; Eanes v. State, 10 Texas Crim. App., 421.

On question of court's charge on self-defense: Seely v. State. 63 S. W. Rep., 309, and cases cited in the opinion.

*E. A. Berry,* Assistant Attorney General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of manslaughter and allotted the minimum punishment of two years in the penitentiary.

Briefly, the facts show that appellant and deceased, Dutch Doss, were closely related by family connection and lived in the same neighborhood. Without going into details, the evidence discloses that appellant got up early, went into his pasture to drive his mules to the lot to feed them with a view of going to the county seat. Deceased was aware of the fact that he was going to the

county seat that morning, and went to appellant's house while he was in the pasture and made indecent proposals to appellant's wife. Upon her declining to accept the proposals he informed her he would go home and arm himself and come back with a view of enforcing his demand. She told him he had better go away, that her husband might get into trouble with him. He went away. Appellant drove his mules to the lot and went to the house to get breakfast. Noticing the disturbed condition of his wife, he asked her what was the matter. She at first told him nothing was the matter, but upon insistence she then told him what had occurred. He got up from the breakfast table, got his gun, and went down to his crib or barn and placed his gun just inside of the crib, and was standing at the door shucking corn when deceased approached within a few steps. A conversation occurred between them with reference to what deceased had done at his, appellant's, house. The deceased informed appellant that it was none of his business, that he would go there when he pleased, and made a demonstration with his right hand to his bosom. He was dressed in overalls, which seems to have had what the witnesses call a lapel or apron to it. When this occurred appellant immediately grabbed his gun and as deceased turned fired twice killing him. There is a good deal of testimony with reference to the physical facts and other matters, but this is the substance of the case.

Various objections were urged to the charge of the court on manslaughter and self-defense. The exceptions are numerous, amounting in total to sixteen. It is unnecessary to follow these as they are laid down. The court, in charging on manslaughter, told the jury that the provocation must arise at the time of the commission of the offense, and that the passion is not the result of a former provocation. We think this exception to this charge was well taken. The provocation in this case was insult to the wife, which occurred about an hour or longer before the homicide. It did not occur at the time of the homicide. The law is that where the killing occurs on account of insulting conduct towards the wife, it must occur at the happening or so soon thereafter as the slayer is informed of it and does the killing upon first meeting. The court should have limited his instructions to the jury to the facts as they· existed. The provocation with reference to this matter did not then arise.

The second paragraph submitting manslaughter, is that the act must be directly caused by the passion arising out of the provocation, if any, at the time of the killing. It is not enough that the mind is merely agitated by the passion arising from some other provocation, or a provocation given by some person other than the party killed. This has the same vice in it as the preceding clause, and in addition, there was no pretense that anyone else

gave any provocation, and that phase of the law could not apply. If there was any provocation upon this line, it was given by deceased and by his insulting conduct towards appellant's wife. It is true, the court later in the charge instructed with reference to insulting conduct, and practically in the language of the statute, but there he instructed the jury that it must be given at the time or so soon thereafter as the party killing meets the offending party. These charges do not harmonize, nor is there any reason for giving the charge with reference to insulting conduct at the time of the homicide. It was given prior to that time and the charge should have submitted this question directly as made by the facts.

The court's charge also leaves it largely as a matter of fact to be determined by the jury as to whether there was adequate cause to produce the state of mind referred to at the time of the killing, and in determining this matter it was their duty to consider all the facts and circumstances in connection with the whole transaction. In a general way, that charge should be given where there are other matters than the statutory cause. The court should have instructed the jury that insulting conduct is adequate cause as made by the statute. The question for their determination is, that being the law, they should determine whether a sufficient passion was engendered. They should further be instructed in this connection that, whether the jury believe the adequate cause existed or not, is not the criterion. They might believe themselves the wife was not insulted, but if she informed defendant of that fact and he believed it, it would be the same so far as his mind was concerned, whether the insulting conduct actually occurred or not. It is defendant's mind that is looked to and his viewpoint of the case as made. If his wife informed him and appellant shot for that reason and believed his wife's information to be true, it would be the same to him whether it was true or false. These matters must always be looked at from the viewpoint of defendant and not from the viewpoint of the jury in the light of subsequent events. The wife testified on the trials as to this insulting conduct and statements of deceased to her, and which she communicated to defendant shortly prior to the homicide. What has been said above, in regard to manslaughter as to provocation, is with this view of a correct charge upon another trial, and to prevent infringement of the theory of self-defense.

Another phase of the manslaughter charge is criticised. It is as follows: ''If you believe that at the time defendant shot and killed deceased, if he did shoot and kill him, the deceased had made a demonstration as if to draw a pistol and attack defendant, and if you believe from the evidence beyond a reasonable doubt defendant was not justified on the ground of self-defense, and if you believe that the conduct of deceased in making such demonstration, together

with all the other facts and circumstances in evidence, was sufficient to render the mind of the defendant incapable of cool reflection and did produce such state of mind in the defendant, then if you convict defendant it cannot be for a higher offense than manslaughter." We believe this charge as given should not have been inserted in the charge. This was the theory of self-defense. Appellant's self-defense proposition is based on apparent danger. Appellant was at his crib shucking corn. Deceased came to the lot armed with a pistol, and a short conversation occurred and the killing followed. The residence of deceased was something like a half mile distant. During the conversation and when it reached the crucial point and deceased placed his hand under the lapel or flap of his overalls, appellant grabbed his gun and fired. No one approached the body of deceased until the officers came. The evidence from them and from all sources is that deceased had a pistol where he had his hand, and that he fell in that position with his hand under him and within two to four or five inches of the handle of the pistol. The pistol was lying across his body under him under the lapel of his overalls. Appellant says he did not know whether he drew his pistol or not; that he did not recall seeing it. This would make a case of self-defense from the standpoint of apparent danger. If from the demonstration of the deceased at the time that he was killed to draw a pistol, appellant shot for that reason, it would be a killing in self-defense from the standpoint of apparent danger. It occurs to us that the charge as given by the court with' reference to demonstration, relegating it to manslaughter, and his limiting the right of self-defense to real attack, makes these errors of grave importance. In applying the law of self-defense the court instructed the jury:

"If from the evidence you believe the defendant killed the said Dutch Doss, but further believe that at the time of so doing the deceased had made an attack on him, which, from the manner and character of it, and the defendant's knowledge of the character and disposition of the deceased, caused him to have a reasonable expectation or fear of death or serious bodily injury and that acting under such reasonable expectation or fear, the defendant killed the deceased, then you should acquit him; and if the deceased was armed at the time he was killed and was making such attack on defendant, and if the weapon used by him and the manner of its use were such as were reasonably calculated to produce death or serious bodily harm, then the law presumes the deceased intended to murder or to inflict serious bodily injury upon the defendant."

Exception was reserved, first, because real danger was not an issue in the case, and, second, the court failed to charge on apparent danger from the demonstration theory. In addition, appellant wrote and requested the court to give instructions applicable to this theory of the case. These were refused, and, we think, incorrectly.

The charge on self-defense should be applicable to the facts, and where the self-defense proposition is based on apparent and not real danger, a charge on real attack should not be given.  Phipps v. State, 34 Texas Crim. Rep., 560; Stewart v. State, 40 Texas Crim. Rep., 649; Seely v. State. 43 Texas Crim. Rep., 66; Benson v. State, 51 Texas Crim. Rep., 367.

Appellant placed the reputation of deceased in issue as to chastity.  His evidence shows it was bad.  The State met this by controverting testimony to the effect that it was good.  Upon cross-examination of State's witnesses in regard to this matter, the defendant proposed to show by such witnesses they had heard of prior trouble deceased had had with reference to the wife of John Rozier, and that this was talked about in the community, and even got into the church of which it seems they were members.  The State objected, and the court sustained the objection and would not permit this phase of the evidence to get before the jury.  We think this was admissible.  They were testing the witnesses as to their credibility and knowledge in reference to facts about which they were testifying.  They had testified to the good reputation and standing of the deceased in regard to chastity.  Appellant, therefore, was authorized and justified in asking if his bad conduct with the wife of John Rozier was known to them and in the community, and if it did not get before the church.  This occurred with reference to more than one witness.  It is sufficient to dispose of that question in this general way without taking up each bill of exceptions.

The State was permitted, over appellant's objection, to place in evidence the general reputation of the deceased as being a peaceable man, one not given to violence, disturbance or a dangerous character.  Various objections were urged to this testimony.  The court permitted this with the explanation to one of the bills that defendant had testified on cross-examination by the State that he knew deceased was a bad negro and had a gun; he was afraid he might come back and hurt him.  The defendant did not place the reputation of deceased in issue.  The State upon cross-examination of defendant elicited the statement shown by the qualification of the judge.  The defendant was a State's witness on this proposition and this was elicited by the State.  This would not form the basis for the introduction of testimony as to the reputaion for peace and quietude of deceased.  Had defendant placed it in issue, there would have been a different question.  The State doubtless sought to bolster this line of testimony from a different angle.

On Saturday perhaps before the killing on Monday, or a day or two previous to the killing, a witness named Pounders testified he had a conversation with deceased in which deceased told him he was in trouble with another man's wife, or other men's wives, and was going to have to leave the neighborhood where he lived and

move to another community; that if he remained there he would either get killed or have to kill somebody. This conversation was general and did not particularize anybody's wife. We are of opinion this does not afford ground for evidence of good reputation of deceased from the viewpoint of making threats against the life of defendant. The court must have taken the same view of this testimony, because he does not submit in his charge to the jury instructions with reference to the law of threats. So from any viewpoint we are of opinion the court erred in admitting the general reputation of deceased as to being a quiet peaceable man.

For the reasons indicated the judgment will be reversed and the cause remanded.

*Reversed and remanded.*