HARRY W. COULSON v. STATE.

No. A-7050.   Opinion Filed Aug. 16, 1930.
(291 Pac. 152.)

J. M. Springer and John Adams, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

EDWARDS, P. J.   The plaintiff in error, hereinafter called defendant, was convicted in the district court of Logan county of manslaughter in the first degree and was sentenced to serve a term of 12 years in the state penitentiary.

Defendant was charged with the murder of one Willie House in the city of Guthrie.   The testimony for the state discloses a state of facts about as follows:   Deceased, a negro youth, and four other negro boys were sit-

ting on a projection of a building at a street corner as defendant and one Richardson were passing. That defendant was in an intoxicated condition. As he was opposite deceased he ordered him to get up, and as he started to rise defendant struck him a blow on the neck with his fist; he staggered a short distance, fell, and died in some 30 minutes. This is substantially the testimony of the companions of deceased. Defendant testified that, as he and Richardson passed the place where deceased and his companions were sitting, he was talking with Richardson and said to him, in substance, he would take him to the park in his automobile, but it had been stolen by a negro; that deceased then jumped up and called him a "white son-of-a bitch," and he turned back to him and deceased struck him two or three times, and he then struck deceased, knocking him against a fire plug and walked away, not knowing the effect of the blow. That he had no intention of killing him and struck in self-defense. This is corroborated by the testimony of Richardson. Thus a sharp conflict is presented by the evidence.

The contention is made that the county attorney in his argument made a prejudicial statement as follows: "The county attorney wants a conviction, the court wants a conviction and the jury should want to convict the defendant." This assignment is not sustained by the record. The argument was not taken by the reporter, and the record does not show that this statement was made, nor any objection to it, if made. The first mention of improper argument is in the motion for new trial, where the statement is set out. It is settled by numerous decisions of this court that improper argument must be objected to and a motion to strike from the consideration of the jury. It is not sufficient to incorporate it in a motion for a new trial. Saunders v. State, 4 Okla. Cr. 264, 111 Pac. 965,

Ann. Cas. 1912B, 766; Miller v. State, 9 Okla. Cr. 255, 131 Pac. 717, L. R. A. 1915A, 1088; Richards v. State, 22 Okla. Cr. 329, 211 Pac. 515; Stout v. State, 41 Okla. Cr. 42, 270 Pac. 90; Halsey v. State, 42 Okla. Cr. 221, 275 Pac. 405.

It is next contended that the court erred in giving instructions Nos. 9 and 11. Instruction No. 9 tells the jury, in substance, that, if the homicide was caused by an assault and battery by defendant upon deceased without any design to effect death, defendant would be guilty of manslaughter in the first degree. Instruction No. 11 tells the jury, in substance, that if they find beyond a reasonable doubt that defendant provoked the difficulty without any intent to kill or inflict serious injury, but for the purpose of chastisement, and, so acting, killed the deceased, he would be guilty of manslaughter. The instructions complained of are not materially erroneous. Taking the instructions as a whole, in the absence of any request for additional instructions upon the points complained of, they fairly state the law of the case.

It is also urged that the court erred in overruling the motion for a new trial on the ground of newly discovered evidence. In support of this motion defendant produced a witness, Horace L. Moad, who testified that he was a farmer, twenty-two years of age, living with his father three miles north of Guthrie. That he was on the crossing about 50 feet from the scene of the difficulty; saw the deceased sitting on the projection of the building, and saw defendant and Richardson passing by; heard them talking, but could not understand what they said, but heard the deceased call defendant a "big white son-of-a-bitch" and saw the ensuing fight. His testimony on this point corroborated in full the testimony of defendant and Richardson. He testified further that he knew none

of the parties; had never seen them before; that he did not tell defendant or his counsel of his having seen the difficulty until after the trial. But since a motion for a new trial on this ground is addressed to the sound discretion of the trial court and the testimony of the witness is cumulative, and with due diligence the defendant should have known of the presence of this witness at the scene of the homicide, there was no error in overruling the motion.

The principal complaint made is that the court admitted incompetent evidence which prevented defendant from having a fair trial. This contention is directed to evidence introduced by the state of the good character of deceased as a peaceable and law-abiding citizen. The defendant made no attack at any time against the character of deceased. The issue is thus squarely presented whether or not in a homicide case, where the plea is self-defense, the state may offer evidence of the good character of deceased where his character has not been attacked by defendant. This precise question seems never to have been considered by this court. Where a defendant introduces evidence tending to show the turbulent, violent, and quarrelsome character of the deceased, it is, of course, competent for the state in rebuttal to show good character in these particulars. However, it is held that, where evidence of bad character is elicited on cross-examination from a witness for defendant this does not justify evidence by the state of good character. Barrett v. State, 86 Tex. Cr. R. 101, 215 S. W. 558. There is some division in the authorities upon the question here presented. A few cases hold that in a homicide case, where the plea is self-defense, and there is evidence in support showing an unprovoked attack by deceased, this authorizes evidence by the state that the character and reputation of deceased

was that of a peaceable and quiet citizen, although defendant has not attacked his general character in this respect. 30 C. J. 233, note 45. The leading case supporting this view is Thrawley v. State, 153 Ind. 375, 55 N. E. 95, 97, where it is said:

"* * * On behalf of appellant no reputation witnesses were produced to show that the character of deceased for peaceableness was bad. Appellant did not testify, but his defense was that he killed deceased in a hand-to-hand encounter, in the proper defense of his person from an apparently felonious assault by deceased. On rebuttal the state proved the good reputation of deceased for peaceableness. * * * But the evidence of the state in support of the charge against appellant was such an attack upon his character for peace as to authorize him to introduce his good character as a substantive fact, involved in the transaction, in disproof of the charge, without the state's consent. So the evidence of appellant in support of the charge against deceased was such an attack upon his character for peace as to authorize the state to introduce his good character as a substantive fact, involved in the transaction, in disproof of the charge, without appellant's consent. * * *"

This case was severely criticized in Carr v. State, 21 Ohio Cir. Ct. R. 43, and in Kelly v. People, 229 Ill. 81, 82 N. E. 198, 200, 12 L. R. A. (N. S.) 1169, 11 Ann. Cas. 226, in which latter case it was said:

"The Supreme Court of Indiana, in Thrawley v. State, 153 Ind. 375, 55 N. E. 95, has determined this question the other way, holding that the reputation of the deceased for peaceableness is admissible as original evidence against one charged with murder where self-defense is relied upon. That decision does not appear to be supported by any authority, and we are not impressed with the reasoning upon which the conclusion rests. In Carr v. State, 21 Ohio Cir. Ct. R. 43, in commenting on this case, it is said that the Supreme Court of Indiana is alone in holding such

evidence competent. Our own investigation will not justify us in a statement so broad, and we therefore prefer to limit our observation to this: that it appears to us that the decision in Indiana is opposed to the great weight of authority on this question."

The Supreme Court of Kansas in the case of State v. Potter, 13 Kan. 414, in an opinion by Brewer, J., held this line of evidence incompetent, saying:

"On the trial and before closing their case the prosecution was permitted over objection to ask witnesses who had testified that they knew the deceased, this question: 'State if you knew his general reputation for being a peaceable, quiet and law-abiding citizen.' And the witnesses testified that he was a peaceable, quiet and law-abiding man. No attack was made by defendant at any time during the trial on the character of the deceased, and no attempt to show that he was a quarrelsome or turbulent man. The question then is fairly presented, whether the prosecution on a trial for murder may, in the first instance, and as a part of their case, show the character and reputation of the deceased. We do not understand counsel for the state as claiming that such testimony is admissible in all cases, but only in cases where there is a doubt as to whether the killing was done in self-defense, and where such testimony may serve to explain the conduct of the deceased and is therefore fairly a part of the res gestae. In such cases it is said that the authorities hold that the defendant may show the bad character and reputation of the deceased as a turbulent, quarrelsome man. See among other authorities, Franklin v. State, 29 Ala. 14; State v. Keene, 50 Mo. 357; Wise v. State, 2 Kan. 429 [85 Am. Dec. 595]; People v. Murray, 10 Cal. 309. And if the defendant may show that the deceased was a known quarrelsome, dangerous man, why may not the state show that he was a known peaceable, quiet citizen? The argument is not good. The books are full of parallel cases. The accused may in some cases show his own good character. The state can never in the first instance show his bad character. A party can never of-

fer evidence to support a witness' credibility until it is attacked. The reasons for these rules are obvious. Such testimony tends to distract the minds of the jury from the principal question, and should only be admitted when absolutely essential to the discovery of the truth. Again, the law presumes that a witness is honest, that a defendant has a good character, and that a party killed was a quiet and peaceable citizen, except so far as the contrary appears from the testimony in the case; and this presumption renders it unnecessary to offer any evidence in support thereof. No authorities have been cited sustaining the admission of such testimony, and the following are in point against it: Ben v. State, 37 Ala. 103; Chase v. State, 46 Miss. 707; Pound v. State, 43 Ga. 128. * * *"

In State v. Reed, 250 Mo. 379, 157 S. W. 316, 318, in discussing this point, the Supreme Court reversed the trial court and said:

"* * * The point at issue is not free from difficulty. The contentions of both the state and defendant are supported by respectable authority, and at first impression we felt like we would be glad to adopt the views of the learned trial judge, but, upon more careful reflection, we fear that, to do so, we would be making a precedent which would open up a Pandora's box of collateral issues to be let into every case, and thereby confuse juries even more extensively than under our present system. There are always many collateral issues that resourceful attorneys could inject ino all kinds of suits, and which might throw some indirect light upon the real issue tendered by the parties. For instance, in a case where one man sues another for debt, if the plaintiff were permitted to prove that the defendant bears the reputation of refusing to pay his just debts, that evidence would work very advantageously in favor of plaintiff, or if, in the same kind of a case, the defendant were allowed to prove that the plaintiff bears the reputation of a contentious individual, habitually suing people upon unjust or illegal claims, the effect of such evidence would likely be disastrous to plaintiff. While evidence of the character mentioned would apparently

tend to establish or disprove specific issues, it would, in reality, tend to prevent just verdicts by clouding the real issues with purely collateral issues, which would draw the minds of the triers of fact away from the direct, legal, and competent evidence in the case, which they should consider most diligently in arriving at their verdicts.

"It is undoubtedly true that a law-abiding citizen is much less likely to commit, or attempt to commit, crime than a man whose conscience is seared by the commission of many crimes; yet it is likewise true that many very grave crimes are committed by people who have theretofore borne a good reputation, so that evidence of a prior good reputation is not a very potent shield against a charge of having committed a specific crime, though a jury might think differently where the evidence is conflicting and the issue arose collaterally. We take judicial knowledge of the fact that it is a great deal less difficult to prove a good reputation on the part of a witness or litigant than to impeach his reputation, for the simple reason that evidence of bad reputation is usually founded upon acts of wrongdoing or moral turpitude, and is of an affirmative character, while evidence of good reputation may be, and usually is, of a negative character, simply showing that the neighbors of a party whose reputation is in issue have not heard anything said derogatory of his conduct. 40 Cyc. 2648."

Other enlightening authorities upon this point are: 3 Greenleaf on Evidence, § 27; Elliott Ev. § 2722; McClain Criminal Law, Vol. 1, § 423; Bishop Crim. Proc. Vol. 2, § 612; People v. Murray, 10 Cal. 310; Bullock v. State, 73 Tex. Cr. R. 419, 165 S. W. 196; Parker v. Commonwealth, 96 Ky. 212, 28 S. W. 500; State v. Eddon, 8 Wash. 292, 36 Pac. 139.

It appears that the evidence complained of may reasonably have brought about the verdict, and the error in admitting it requires a reversal.

The case is reversed and remanded.

DAVENPORT, J., concurs.

CHAPPELL, J. (dissenting). I cannot concur in the majority opinion for two reasons: First, because the evidence was not incompetent.

The evidence of the state was that the defendant and one Richardson were both drunk, and the defendant stopped opposite the deceased and ordered him to get up, and that, as deceased started to get up in response to the command of the defendant, defendant struck deceased a blow on the neck with his fist; that deceased staggered a short distance to the north and fell, and died within 20 or 30 minutes as the result of a broken neck caused by the blow struck by defendant.

Defendant claims that he made a remark to Richardson as he passed these negro boys that he would take him down to the park in his automobile, but that same had been stolen by a nigger. That thereupon deceased jumped up from the place where he was sitting and said to the defendant, "Who are you calling a nigger, you white son-of-a-bitch," and that thereupon deceased struck defendant two or three blows with his fist, and that defendant only struck deceased once with his fist in his own self-defense.

The court permitted the state, in rebuttal to this claim that the deceased made a violent and unprovoked attack upon the defendant, to introduce evidence that the deceased was of quiet and peaceable character. Defendant contends that this was error, for the reason that the defendant had not put the character of the deceased as a peaceable and quiet citizen in issue.

The question presented is whether or not in a homicide case, where the issue of self-defense is presented, and

the defendant and his witnesses testify to facts that make the deceased the aggressor and show an unprovoked attack by deceased on the defendant, that lays a sufficient predicate to authorize the state in rebuttal to introduce evidence of the character of the deceased as a peaceable and quiet citizen to rebut the inference that as such citizen he would not likely make the attack as testified to by the defendant and his witnesses.

On this question the authorities are divided, and this court now for the first time passes upon same. Some authorities hold that before evidence of this kind is admissible in rebuttal it is necessary for the defendant to have made a direct attack upon the reputation of the deceased as a peaceable and quiet citizen. There are other authorities, however, which hold that, where the defense is self-defense and where the evidence of the defendant and his witnesses is that the deceased made an unprovoked attack upon defendant and that deceased was the aggressor, this evidence sufficiently raises the issue of the character of the deceased to entitle the state in rebuttal to show that the deceased was a peaceable and quiet citizen.

In the case of Fields v. State, 134 Ind. 46, 32 N. E. 780, the court said:

"Where defendant, on trial for murder, testifies that deceased assaulted him, and that he apprehended great injury from the assault, the peaceable character of deceased may be shown in rebuttal."

In the case of Thrawley v. State, 153 Ind. 375, 55 N. E. 95, 97, that court said:

"On behalf of appellant no reputation witnesses were produced to show that the character of deceased for peaceableness was bad. Appellant did not testify, but his defense was that he killed deceased in a hand-to-hand encounter, in the proper defense of his person from an ap-

parently felonious assault by deceased. On rebuttal the state proved the good reputation of deceased for peaceableness. * * * The character for peace of each of them was presumed to be good, in the absence of evidence. But the evidence of the state in support of the charge against appellant was such an attack upon his character for peace as to authorize him to introduce his good character as a substantive fact, involved in the transaction, * * *without out the state's consent. So the evidence of appellant in support of the charge against deceased was such an attack upon his character for peace as to authorize the state to introduce his good character as a substantive fact, involved in the transaction, in disproof of the charge, without out appellant's consent."

In Fields v. State, supra, Fields squarely raised the very question presented by Thrawley, and the court said:

"The defendant testified that the deceased assaulted him, and that he apprehended great injury to life or limb from the assault. On rebuttal the court permitted the state to prove that the deceased was a peaceable, quiet man. This was not erroneous."

On the question as to whether or not deceased was in fact the aggressor, this evidence was admissible in negation of appellant's declaration that he was, just as evidence of appellant's good character for peace would have been received in disproof of the state's evidence that appellant was the aggressor. See, also, State v. Wilkins, 72 Or. 77, 142 Pac. 589; McKie v. State, 165 Ga. 210, 140 S. E. 625; Ferguson v. State, 138 Tenn. 106, 196 S. W. 140; Webster v. State, 207 Ala. 668, 93 So. 545; State v. Holbrook, 98 Or. 43, 188 Pac. 947, 192 Pac. 640, 193 Pac. 434; Commonwealth v. Castellana, 277 Pa. 117, 121 A. 50.

Where there is evidence that the homicide was committed in self-defense, or the evidence is wholly circumstantial and the character of the transaction is in doubt,

the character of the deceased is competent. State v. Banner, 149 N. C. 519, 63 S. E. 84; Green v. State, 143 Ala. 2, 39 So. 362; Wells v. State, 18 Tex. App. 417; Heffington v. State, 41 Tex. Cr. R. 315, 54 S. W. 755; Spangler v. State, 41 Tex. Cr. R. 424, 55 S. W. 326; Fields v. State, 134 Ind. 46, 32 N. E. 780; Thrawley v. State, 153 Ind. 375, 55 N. E. 95; State v. Wilkins, 72 Or. 77, 142 Pac. 589; McKie v. State, 165 Ga. 210, 140 S. E. 625; State v. Morey, 25 Or. 241, 35 Pac. 655, 36 Pac 573; People v Anderson, 39 Cal. 703; Bowlus v. State, 130 Ind. 227, 28 N. E. 1115; Cook v. State, 5 Ala. App. 11, 59 So. 519; State v. Jones, 48 Mont. 505, 139 Pac 441; Barnett v. State, 76 Tex. Cr. R. 555, 176 S. W. 580.

There is no division of authorities upon the question that the state may not introduce evidence of the character of the deceased until the defendant puts the question in issue. The division arises upon the question of what evidence is necessary to put the character of the deceased in issue. The authorities relied upon in the majority opinion are to the effect that self-defense and proof by defendant of an unprovoked attack by deceased are not sufficient to put the character of the deceased in issue, while the authorities cited in this dissenting opinion hold to the contrary.

Under the Constitution and laws of the state of Oklahoma and the liberal construction put thereon by this court, I am of the opinion that this court should follow those authorities which adopt the more liberal rule and should hold that the evidence introduced by the state was competent under all of the facts and circumstances as detailed by the defendant and his witnesses in his defense.

The second reason why I cannot agree with the majority opinion of the court is that, even if the evidence

was incompetent, that furnishes no sufficient ground for a reversal of the case.

Section 2822, C. O. S. 1921, provides:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

Under the provisions of this section, this court may reverse the case on one of two grounds: First, when there is a miscarriage of justice.

The facts in this case disclose a wanton and unprovoked attack by a full-grown man upon a defenseless sixteen year old colored boy, which resulted in the almost immediate death of the boy. The defendant had a fair trial; the evidence amply supports the verdict of the jury; and the errors of law complained of are all technical and without merit. To reverse this case will cause a miscarriage of justice and defeat the very purpose for which section 2822, supra, was enacted and set at naught the many holdings of this court beginning with George v. U. S., 1 Okla. Cr. 307, 97 Pac. 1052, 100 Pac. 46, and coming down through all the decisions of this court to this date.

Second. This court may reverse a case where the defendant has been deprived of a constitutional or statutory right.

There is no statute nor constitutional provision in Oklahoma making the evidence complained of in this case

incompetent. The rule contended for by defendant and supported by the majority opinion of this court is wholly case law, except in the state of Texas, where same is regulated by statute. The defendant was not deprived of a statutory nor constitutional right by the admission of this evidence, and such error, if any, furnishes no ground for a reversal of the cause.

For the reasons stated, I cannot concur in the majority opinion of this court reversing the case.